The **MONTANA POWER COMPANY, a Montana corporation, Petitioner,**

v.

The **FEDERAL POWER COMMISSION, Respondent.**

No. 18451.

United States Court of Appeals
Ninth Circuit.

April 14, 1964.

Rehearings Denied May 25 and June 11, 1964.

782

William H. Coldiron and John C. Hauck, Butte, Mont., Weir, Gough & Booth, and Edwin S. Booth, Helena, Mont., and Willard W. Gatchell, Washington, D. C., for petitioner.

Richard A. Solomon, Gen. Counsel, Howard E. Wahrenbrock, Sol., Thomas M. Debevoise, Asst. Gen. Counsel, and Paul A. Sweeney, Sp. Consultant, Federal Power Commission, Washington, D. C., for respondent.

Before MERRILL and DUNIWAY, Circuit Judges, and FRED M. TAYLOR, District Judge.

FRED M. TAYLOR, District Judge, and DUNIWAY, Circuit Judge.

The Montana Power Company, a Montana corporation, has petitioned us to review an order of the Federal Power Commission issued on October 12, 1962, granting to the petitioner a license pursuant to Section 4(e) of the Federal Power Act, 16 U.S.C. § 797(e). Petitioner filed an application for rehearing which was denied by the Commission on December 13, 1962, as to the questions presented here. We have jurisdiction to review the Commission's order by virtue of § 313(b) of the Act, 16 U.S.C. § 825l (b). The facts presented on this review are not in dispute.

■ The Montana Power Company, a New Jersey Corporation (hereinafter referred to as Montana-New Jersey), was authorized to do business in the States of Montana, Idaho and Wyoming. In 1916 it secured from the United States Department of Agriculture a permit to perform preliminary work on a proposed hydroelectric facility in the State of Montana known as the Mystic Lake Project. In 1919, after preliminary work had been completed, Montana-New Jersey filed application for a Final Power Permit. On May 27, 1920, the Acting Secretary of Agriculture issued the Final Power Permit to occupy certain lands in the State of Montana and construct and operate thereon certain project works, to be known as the Mystic Lake Hydroelectric Development, for the purpose "of storing, conducting, and, or, using water for the development of power or the transmission, distribution, and use of power." [1] The permit provided that it

---

[1] The Final Power Permit was issued by the Secretary of Agriculture under authority of the Act of February 15, 1901, c. 372, 31 Stat. 790 as amended in 1905 by 33 Stat. 628.

A few days after the Secretary issued this Final Power Permit (June 10, 1920), Congress enacted the Federal Power Act, 41 Stat. 1063, 16 U.S.C. §§ 791–823, which created the Federal Power Commission. The purpose of the Act was to provide for the improvement of navigation, development of water power, and

the use of public lands in relation thereto. Section 4(d) of the Act (now Section 4(e), 16 U.S.C. § 797(e)), authorized the Commission to issue licenses to any corporation for the purpose of constructing, operating, and maintaining dams, power houses, transmission lines, or other project works necessary or convenient for the development, transmission, and utilization of power across, along, from or in any of the navigable waters of the United States, or upon any part of the public lands and reservations

should terminate and become void on the 31st day of December, 1969, but that the permittee could apply for a new permit before that date, and that the permittee could transfer the permit with the approval of the Secretary.[2]

The Mystic Lake Development was in full operation in 1926 and thereafter Montana-New Jersey produced, distributed and sold electric energy within the States of Montana, Idaho and Wyoming.

In 1961, Montana Power Company, a Montana corporation (hereinafter referred to as Montana-Montana), was organized and an agreement of merger dated April 19, 1961, was entered into between it and Montana-New Jersey for the purpose of transferring the domicile of the corporation from the State of New Jersey to the State of Montana. By this agreement all property, assets, debts, and liabilities of Montana-New Jersey would be transferred to Montana-Montana and it would then be the surviving entity. The officers and directors of Montana-Montana were authorized by the agreement to take any and all necessary actions to effectuate the transfer of the property, assets and liabilities for Montana-New Jersey on and after the date

of merger in the name of and for the New Jersey corporation. The property, assets, debts, liabilities, operations and officers were to remain the same when the merger became effective. The objective was solely to have the business conducted by a corporation domiciled in Montana.[3]

On June 13, 1961, Montana-Montana and Montana-New Jersey filed a joint application for approval of the merger with the Commission as required by Section 203 of the Act, 16 U.S.C. § 824b. This application described the proposed merger as it would be executed under the terms of the merger agreement which was attached thereto as Exhibit "L"; stated that Montana-Montana would succeed to the Final Power Permit issued to Montana-New Jersey in 1920;[4] and that the sole purpose of the merger was to change the domicile of the corporation from the State of New Jersey to the State of Montana.

On August 29, 1961, before the application for approval of the merger had been acted upon by the Commission, Montana-New Jersey filed an application with the Commission seeking a fifty year "fair value" power license under Section 23(a)

---

of the United States. The Act confers no express authority upon the Commission to exercise any of the powers or rights in respect of permits theretofore exercised separately by the Secretaries. Section 29 of the Act, 16 U.S.C. § 823 provides that "All Acts or parts of Acts inconsistent with this chapter are repealed."

2. For the purpose of this review, the parties apparently agree that a permit cannot now be transferred to another corporation by merger but that a license issued by the Federal Power Commission may be transferred by merger if such transfer is first approved by the Commission as required by Section 203 of the Act, 16 U.S.C. § 824b.

3. The agreement also provided: "The merger contemplated hereunder shall take effect upon" its adoption by "the holders of not less than two-thirds of the * * * shares of capital stock of each of said corporations," and upon the filing and recording of documents and performance of acts required under law. "The

effective date of this merger shall be the date upon which this agreement * * * is filed and recorded * * *," and that "The separate existence of the New Jersey Corporation shall cease on the effective date of the merger as provided by law."

4. See footnote 2, supra. Both corporations knew that the Final Power Permit was not assignable. Montana-New Jersey had discovered this, to its sorrow, several years ago. Montana Power Co. v. Federal Power Commission, 1950, 87 U.S.App.D.C. 316, 185 F.2d 491, cert. den., 340 U.S. 947, 71 S.Ct. 532, 95 L.Ed. 683, had so held, as to certain comparable permits that Montana-New Jersey thought it had acquired by merging the holders of such permits into itself. (See also Hauser Dam Project, 7 P.F.C., 163, 184–7; 32 Ops.A.G. 525 (1921); Annual Report of the Federal Power Commission, 1927, pp. 144, 145; id., pp. 109–10, 142–9; 2 F.P.C. 900). Montana-Montana can hardly be said not to know what Montana-New Jersey obviously did know.

of the Act, 16 U.S.C. § 816.[5] The first paragraph of this application contained a request that Montana-New Jersey "be granted authority to continue the operation of this project pending the issuance of a license in the event the joint application of the Applicant and the Montana Power Company, a Montana Corporation, in docket E–7000 for the approval of the merger * * * be approved prior to the issuance of the license herein requested." This application further stated: "Applicant proposes to transfer the license herein applied for to said Montana Corporation if the Federal Power Commission approves the merger as requested in said Docket No. E–7000."[6] We have no doubt that this application was filed by Montana-New Jersey alone because that corporation knew that it could not transfer the permit to Montana-Montana, by merger or otherwise. (See footnote 4) That is why the application for the license contained the language quoted above and in the margin.

On November 1, 1961, four and one-half months after filing the application for approval of merger and two months after filing the above application for a Section 23(a) "fair value" license, the Federal Power Commission issued an order approving the merger.[7] The order

5. Section 23(a) of the Federal Power Act, 16 U.S.C. § 816, deals specifically with permits issued before its enactment on June 10, 1920.

A permittee holding a permit issued before enactment of the Federal Power Act has two choices: as provided by this permit, he may continue to operate under it until its expiration date, here December 31, 1969, at which time the United States may take over the project works without paying compensation therefor; or before such expiration date he may apply to the Commission for a Section 23(a) "fair value" license. If a permittee takes the latter course as did Montana-New Jersey, Section 23(a) provides that the applicant is entitled as a matter of right to have its investment fixed at the project's "fair value" determined as of the time the license is issued, rather than have its investment fixed at the project's original cost less depreciation, the formula provided for Section 4(e) licenses by Section 3(13) of the Act, 16 U.S.C. § 796(13). Except for this distinction, licenses issued under Section 4(e) and § 23(a) are identical. If the United States elects to take over a project on the expiration date of a license, it must pay compensation according to the formula provided by the Act: In the case of a Section 23(a) license the "fair value" determined as of the date of issuance of the license; in the case of a Section 4(e) license, "original cost less depreciation."

6. In addition, Exhibit "O" attached to the application for a § 23(a) license contains the following language:

"Applicant desires the license herein applied for to be issued within the time required for effecting the merger, as described in Docket No. E–7000, or

some arrangement to be provided for the continued operation of the Project by the Applicant or by the Montana Power Company, a Montana Corporation, after the effective date of the merger and prior to the issuance of the license herein applied for."

7. The order approving the merger provides in part:

"According to the application, the Directors of Montana-Power—New Jersey have voted to change the State of incorporation of Montana Power—New Jersey from the State of New Jersey to the State of Montana. To this end, Montana Power—Montana has been organized under the laws of the State of Montana, and it is proposed that Montana Power—New Jersey will be merged into Montana Power—Montana, the latter to be the surviving corporation, subject to obtaining all requisite approval of the regulatory authorities and of the shareholders of these corporations. On the effective date of the proposed merger, Montana Power —New Jersey will cease to exist as a corporate entity, and Montana Power —Montana will succeed to all licenses, franchises, permits, corporate assets, and tangible and intangible property of Montana Power-New Jersey and will also assume all debts, liabilities, and obligations of Montana Power-New Jersey * * * No other consideration will be given in connection with the proposed merger, which will be carried out in accordance with the terms of a Joint Agreement of Merger, dated April 19, 1961, between Montana Power— New Jersey and Montana Power—Montana, which was filed as an exhibit to the application.

provided that authorization of the merger would expire unless the transactions authorized and approved therein were consummated within sixty days. The transactions authorized and approved by the order are set forth in footnote 7 of this opinion and include the transfer of permits and licenses. For the reasons stated in footnote 4, this approval could not authorize a transfer to Montana-Montana of the Final Power Permit.

Nothing in the order authorizing the merger requires the corporations to proceed; it merely provides that the authorization will expire if the merger is not consummated within sixty days. The order does not specifically refer to the Final Power Permit; it does not mention Montana-New Jersey's pending application for a license; it says nothing about the request contained in that application for authority to Montana-New Jersey to continue operation of the project if the merger be first approved. The corporations did not ask for a clarification or for an extension of the sixty day time limit. Nor did they call off the merger, as either of them had the unqualified right to do under the merger agreement. On the contrary, they proceeded with the merger, and they did this in spite of the fact that the merger agreement, the application and the Commission's approval all specifically provided that Montana-New Jersey would cease to exist when the merger was consummated. Thirty days after the order approving the merger was issued, November 30, 1961, the merger had been consummated except that the Final Power Permit, which could not be transferred by the merger, had not been transferred and the Commission had not acted upon Montana-New Jersey's application for a Section 23(a) license or the special request contained therein.

On October 12, 1962, the Commission entered its order relative to Montana-New Jersey's application for a Section 23(a) "fair value" license.[8] By its order,

---

"*The Commission finds:*

"(3) By the proposed transaction, as described above, Montana Power—New Jersey will dispose of the whole of its facilities subject to the jurisdiction of the Commission, within the meaning and subject to the requirements of Section 203 of the Federal Power Act.

"(4) The proposed disposition of facilities, as recited above, upon the terms and conditions set forth in the application and subject to the provisions of this order will be consistent with the public interest as expressed in Section 203 of the Federal Power Act for the reasons stated above.

"*The Commission orders:*

"(A) The proposed disposition by Montana Power—New Jersey of the whole of its facilities subject to the jurisdiction of the Commission, as described above, is authorized and approved upon the terms and conditions and for the purposes set forth in the application, subject to the provisions of this order.

"(B) * * *

"(C) This authorization shall expire unless the transactions herein authorized and approved are consummated within 60 days from the date of issuance of this order."

8. The order denying a Section 23(a) license provides in part:

"Applicant formerly was a corporation organized under the laws of the State of New Jersey. However, pursuant to application therefor, by our order issued November 1, 1961, we authorized the disposition of electric facilities subject to our jurisdiction and owned by the Montana Power Company, a New Jersey Corporation, to the Montana Power Company, a Montana Corporation. Our order provided that the authorization would expire unless the transactions approved were consummated within 60 days from the date of issuance of the order. Our records show that such transactions were consummated on November 30, 1961.

"The Montana Power Company, a New Jersey corporation, ceased to exist as of November 30, 1961, and the Final Power Permit issued to it by the Acting Secretary of Agriculture likewise ceased to be of any legal effect from that day on. Hence, Applicant was not giving up anything of value in applying for a license under the Federal Power Act for the continued lawful operation of its project. In such circumstances, Applicant has not shown

which treated Montana-Montana as the applicant, the Commission held, *inter alia*: that Montana-Montana formerly was a corporation organized under the laws of New Jersey; that Montana-New Jersey, the actual applicant, had ceased to exist as of November 30, 1961, the effective date of the merger and the Final Power Permit issued to it likewise ceased to be of legal effect from that date on; that therefore Montana-Montana was not giving up anything of value in applying for a license under the Federal Power Act for the lawful operation of its project and has not shown that it is entitled to a license under Section 23(a) of the Act; and that the Final Power Permit issued in 1920 would have expired on December 31, 1969, if the New Jersey corporation had not ceased to exist.

The Commission thereupon issued to Montana-Montana a Section 4(e) "original cost less depreciation" license, effective as of December 1, 1961, and terminating December 31, 1969, for the continued operation and maintenance of Constructed Mystic Lake Project No. 2301.

Petitioner has specified eight errors. They may be summarized as follows: (1) The Commission erred in refusing to issue to either Montana-Montana or Montana-New Jersey a Section 23(a) "fair value" license; (2) that by reason of such refusal, one of those corporations was deprived of a valuable property right without due process of law; (3) that the

Commission erred in refusing to issue a "fair value" license for a term of fifty years; and (4) that it erred in issuing its order on the application for license without first having held a hearing, and that it erred in failing to hold a hearing on the petition for rehearing.

The parties seem to agree that if the Commission issues a license to one who holds a valid Final Power Permit issued before June 10, 1920, the date of the enactment of the Federal Power Act, Section 23(a) of that Act, 16 U.S.C. § 816, requires that the license so issued shall be a "fair value" license; that one who is not the holder of a valid permit issued before June 10, 1920, cannot receive a "fair value" license; that the Final Power Permit issued to Montana-New Jersey on May 27, 1920, could not have been transferred to Montana-Montana by virtue of the merger; that Montana-Montana was not entitled in its own right to a "fair value" license; and that the only way Montana-Montana could acquire a "fair value" license was by a transfer of such *license* from Montana-New Jersey.

The record and briefs of the parties indicate that except for their respective domiciles, Montana-New Jersey was the same corporation before merger as Montana-Montana was after the merger; that Montana-New Jersey was just as qualified and entitled to receive a license before the merger as was Montana-Montana after the merger; that there is no

that it is entitled to a license under Section 23(a) of the Act. It appears that the permit would have expired on December 31, 1969, approximately 50 years after its issuance, if the New Jersey corporation had not ceased to exist. In these circumstances, the term of the license issued herein will be for a period effective as of December 1, 1961, and terminating December 31, 1969.

"*The Commission finds:*

"(3) Applicant is a corporation organized under the laws of the State of Montana and has submitted satisfactory evidence of compliance with the requirements of all applicable State laws insofar as necessary to effect the purposes of a license for the project.

"(4) No conflicting application is before the Commission. Public notice has been given. No formal protest has been received.

"*The Commission orders:*

"(B) This license is hereby issued to the Montana Power Company (hereinafter referred to as the Licensee) under Section 4(e) of the Act for a period, effective as of December 1, 1961, and terminating December 31, 1969, for the continued operation and maintenance of constructed Mystic Lake Project No. 2301 located on Mystic Lake and West Rosebud Creek in Stillwater County, Montana, and affecting lands of the United States within Custer National Forest * * * "

difference between a Section 4(e) license and a Section 23(a) license except that the former is an "original cost less depreciation" license while the latter is a "fair value" license; that if the merger had never taken place, Montana-New Jersey would have been the holder of a valid Final Power Permit issued before June 1, 1920, and if a license were issued by the Commission to Montana-New Jersey it would have been required by the Act to have been a "fair value" license; that if the merger had taken place *after* the Commission had issued a "fair value" license to Montana-New Jersey, such license would have been transferred to Montana-Montana by the merger; and that such transfer would have received the Commission's prior approval required by 16 U.S.C. §§ 801 and 824b.

Two months prior to November 1, 1961, the date the Commission issued its order approving the merger, it was placed on notice that these corporations intended to transfer to Montana-Montana, any license issued to Montana-New Jersey either before or after the merger. The application of Montana-New Jersey filed August 29, 1961, for a Section 23(a) "fair value" license contained a specific request that Montana-New Jersey be granted authority to continue the operation of this project pending issuance to it of a license, in the event the joint application of the corporations for approval of the merger was approved by the Commission prior to the issuance of the license. The Commission's order approving the merger, entered two months later, did not expressly act on this request or indicate in any way that the request would not be granted. It did not place the corporations on notice that the Commission would subsequently hold that the license applied for by Montana-New Jersey would not be issued to Montana-New Jersey after the merger for the reasons stated in the order. Neither did the order place them on notice that the Commission would hold that the Final Power Permit, which by operation of law could not be transferred by merger, would cease to be of legal effect on the "effec-

tive date" of the merger. In fact, the language of the order approving the merger indicated that the Commission approved the merger only if it were consummated in accordance with the application for approval of the merger filed June 13, 1961, the terms of the merger agreement and the intent of the parties to such agreement which expressly contemplated transfer of the Final Power Permit to Montana-Montana by merger.

Petitioner suggests that nothing in the record at the time that the merger was approved indicated to it an intention on the part of the Commission to deny the Section 23(a) license if the merger were consummated. This is correct. But we do not think that it follows that the corporations were "misled." The record would support the conclusion that the corporations relied upon the language that we have quoted from the Montana-New Jersey petition for a license, overlooking, perhaps through inadvertence, the legal effect of consummating the merger. One could say that they went ahead with their eyes open and thus lost their Section 23(a) rights. This, we think, is not a just result.

We also suspect that the Commission overlooked the problem when it authorized the merger. There is nothing in the application for authority to merge that would call the attention of the Commission to the fact that the Final Power Permit was not assignable, although both the corporations and the Commission should have been aware of it. The problem was first specifically brought to the attention of the Commission in the license application that was filed over two months later. We cannot help suspecting that the two matters were handled by different sections or divisions of the Commission's staff, and that there was a lack of communication between them. The merger application, being of a fairly routine and simple character, and having been filed earlier, would normally be acted upon more promptly. The approval was on November 1, 1961. The license application, having been filed later, and involving one of the Commission's principal discretion-

ary duties, would normally take more time to "process," and be acted upon later. The order was actually issued on October 12, 1962. By that time, the staff "processing" the application, having had its attention called to the merger application, and having ascertained that the merger had been consummated, apparently concluded that, as a matter of law (a) Montana-New Jersey no longer existed, (b) it could therefore no longer operate under the Final Power Permit, (c) the permit could not pass to Montana-Montana, (d) there was therefore no corporation holding such a permit to which a Section 23(a) license could be issued. The Commission did not want to have the Mystic Lake project cease operating. It therefore issued to Montana-Montana, as assignee of the *project,* but not of the *permit,* a Section 4(e) license. The logic of this result may be correct, but again we think that it is not just.

 We think that the Commission, in fairness to the corporations, should have considered the applications together, and passed upon the license application on its merits, before acting on the merger. It would have thus avoided the technical problem that has arisen. We think that the order in which the applications were filed, and the manner in which they were drawn, may have contributed to the Commission's failure to handle them in the manner desired. Thus both sides can be said to be at fault in bringing about the present problem. We also think that, under these peculiar facts, we can treat the matter as if the Commission had acted as it should have, and order it to change the license that it has issued to a Section 23(a) license. This is but an application, in a new setting, an administrative snarl into which both the corporations and the Commission seem to have stumbled, of an old principle, that equity regards as being done that which ought to have been done.

 The Commission, however, says that it has not passed on the merits of Montana-New Jersey's application for a Section 23(a) license, because it could not do so, and that, if it had, it might have denied such a license. It points to the language of the section "the Commission *may* issue * * * a license" in contrast to the portion of the section which says that "fair value * * * *shall"* be as there defined. It says that the section gives it discretion to deny the license.

But the Commission exercised that discretion when it decided to issue a Section 4(e) license to Montana-Montana. That corporation and Montana-New Jersey are in every material respect identical. And Section 23(a) contains no special guides or standards for the exercise of the Commission's discretion. On the contrary, it refers to Sections 1, 2, 3–24, and 26–29 (16 U.S.C. §§ 792, 793, 795–818 and 820–823). Those sections apply equally to a Section 4(e) license. Thus, when the Commission issued the Section 4(e) license, it must have determined that all applicable standards had been met; it is certainly in no position to claim that it did not.

Under the circumstances here we are of the opinion that Montana-Montana is entitled to a "fair value" license under Section 23(a) of the Act, 16 U.S.C. § 816.

We do not think that the decision in Montana Power Co. v. Federal Power Commission, supra, note 4, is contrary to our decision here. There the corporations proceeded to merge without ever seeking a Section 23(a) license, and took no steps to protect any rights under that section. Here, they did seek to protect those rights, and stand to lose them only because of an administrative procedural snarl having no rational relationship to the question as to whether they ought to lose them.

 Petitioner urges that it should not only have been granted a "fair value" license but that the term thereof should be for the maximum period of fifty years and that we should order the Commission to issue such a license for that period. Section 6 (16 U.S.C. § 799) provides that the term of a license is within the sound discretion of the Commission. In our opinion it has not been shown that the Commission abused its

discretion in fixing the term of the Section 4(e) license which was issued to Montana-Montana. By the express terms of Section 23(a), section 6 is applicable to a Section 23(a) license, just as it is to a Section 4(e) license. Pennsylvania Power and Light Co., Opinion No. 380, March 13, 1963, —— FPC ——, cannot be distinguished on the ground urged by petitioner.

In view of this decision we do not deem it necessary to decide whether the Commission erred because of its failure to hold hearings on the application for license and on the petition for rehearing.

The cause is remanded to the Commission with directions to modify its order of October 12, 1962, Project No. 2301, to provide that the license issued thereunder shall be a license under Section 23(a) of the Federal Power Act, and to issue such a license to Petitioner, such license to conform in all other respects to the license provided for in the order of October 12, 1962, as modified on December 13, 1962.