Henry E. REEVES, Plaintiff,

v.

Cecil D. ANDRUS, Individually and as Secretary of the Interior, et al., Defendants.

No. A–158–73 Civil.

United States District Court, D. Alaska.

Feb. 14, 1979.

James D. Rhodes of Cole, Hartig, Rhodes, Norman & Mahoney, Anchorage, Alaska, for plaintiff.

Alexander O. Bryner, U. S. Atty., for Alaska, James R. Mothershead, Asst. Regional Sol., Dept. of the Interior, Anchorage, Alaska, for defendants.

MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on plaintiff's motion for partial summary judgment. Oral argument on this motion is

denied in order to expedite the business of the court. Local Rule 5(C)(1).

The plaintiff in this case has been attempting since July 2, 1965 to perfect a claim under the homestead laws as they then applied to Alaska.[1] The facts are contained in a stipulation prepared for Administrative Law Judge Ratzman and appear in a decision issued by him on April 16, 1976, in *In the Matter of Reeves*, No. AO 62807.

"On July 2, 1965, Mr. Reeves filed with the Bureau of Land Management (U. S. Department of the Interior) a Notice of Location of Settlement or Occupancy Claim in Alaska. The Notice of Location was filed pursuant to the Act of April 29, 1950. 48 U.S.C. §§ 371–371c, 461a, and was given the designation No. A062807 by the Bureau's Anchorage office. [Exhibit 7]

Records are maintained by the Bureau of Land Management (hereinafter referred to as the Bureau) which indicate, as of a given time, the public lands that are available for entry and settlement pursuant to the homestead laws of the United States. At some time prior to July 20, 1965, Bureau records indicated that the location of settlement filed by Mr. Reeves would not be within any area withdrawn or reserved by the United States.

The United States, under the Act of June 10, 1920, 16 U.S.C. 818, is empowered to withdraw lands for power site classification, a power site classification (No. 439) made under that Act contained a description for Chilkoot Lake and River Alaska. Prior to July 20, 1965, a Bureau land status map indicated that the northern boundary of the Chilkoot Lake withdrawal area ended just above the inlet to Chilkoot Lake. [See Exhibit 'A' to Exhibit 48].

On or prior to July 20, 1965, the Bureau caused Power Site 439 to be replatted. [See Exhibit 'B' to Exhibit 48] Mr. Reeves was notified in 1965 that his homestead entry was in conflict with Power Site Classification No. 439. The replat of Power Site Classification No. 439 encompassed a large portion of Mr. Reeves' homestead selection. The latter was informed by an official of the Bureau that he could petition the Bureau pursuant to 43 C.F.R. Subpart 2022.3 for restoration of lands from the power site withdrawal of lands which he had selected. [Exhibit 45] By letter dated August 3, 1966, Mr. Reeves, through his counsel, filed an application with the Federal Power Commission for Vacation of Withdrawal of Power Site Classification 439 to the extent that the withdrawal resulting from said Classification conflicted with the land area within the homestead selection. [Exhibits 46, 47, and 48] The Federal Power Commission made a determination on August 29, 1967, which was received and serialized as No. AA–2135 in September, 1967, by the Bureau. [Exhibit 83] At the time this action was taken the F.P.C. was duly authorized to act, and did act, in accordance with Section 24 of the Federal Power Act. The F.P.C. determination was that the power value of the lands within the Reeves' homestead selection would not be injured or destroyed by the use thereof as applied for, subject to the provisions of Section 24 of the Federal Power Act.

In response to the inquiry from the Department of the Interior the State of Alaska, by a letter dated February 6, 1968, [Exhibit 94] waived any preference right of selection that ordinarily would have been accorded to the State in the revocation order (which, if issued, would have stated that the subject lands were available for homestead settlement subject to Section 24 of the Federal Power Act). In addition the Department of the Interior determined that said lands were not valuable or potentially valuable for geothermal resource development. [Exhibit 92]

---

1. The homestead laws were made applicable to Alaska by the Act of May 14, 1898, 30 Stat. 409, as amended. The Alaska homestead laws were repealed by Public Law 94–579, Title VII, § 703(a), October 21, 1976, 90 Stat. 2789. *See* 43 U.S.C.A. § 270 (Supp.1978).

By memorandum dated May 29, 1968, [Exhibit 107] the Bureau's Alaska State Director recommended to the Bureau's Director that the latter official approve for submission to the Secretary of the Department of the Interior a proposed land order (designated AA–2135) [Exhibit 114] opening to public entry the portion of Power Site Classification 439 which conflicts with Mr. Reeves' homestead settlement. The Alaska State Director also transmitted to the Director a memorandum dated June 27, 1968, [Exhibit 112] recommending that the Director approve for submission to the Secretary a proposed land order (designated AA–2135) which could constitute a record-clearing action relating to the determination issued by the Federal Power Commission (the proposed land order would have contained a provision relating to the need to extinguish Indian title to the subject lands). The Department of the Interior by a letter dated July 31, 1968, [Exhibit 119] advised Mr. Reeves' attorney that the Reeves homestead selection was contained within an area included within Native Protest AA–431, and that it would be improper for the Department to issue an order opening the lands to disposition. Thereafter, the file (AA–2135) associated with Mr. Reeves' request for restoration of the homestead selection was held in abeyance and no action has taken thereon, pending Congressional consideration and debate over passage of the Native Land Claims Settlement Act.

2. § 818. Public lands included in project; reservation of lands from entry.

Any lands of the United States included in any proposed project under the provisions of this subchapter *shall* from the date of filing for application therefor be reserved from entry, location, or other disposal under the laws of the United States until otherwise directed by the Commission or by Congress. Notice that such application has been made, together with the date of filing thereof and a description of the lands of the United States affected thereby, *shall* be filed in the local land office for the district in which such lands are located. Whenever the Commission *shall* determine that the value of any

The Alaska Native Claims Settlement Act was passed on December 18, 1971; however, no native group has selected the lands which are involved in this proceeding."

Other stipulations agreed upon by counsel on behalf of the parties before the hearing officer are as follows:

1. There was no impropriety in the filing by Mr. Reeves' counsel in 1966 of a Petition for Restoration directly with the Federal Power Commission rather than with the B.L.M.

2. That Mr. Reeves has not filed a final proof supported by two credible witnesses in accordance with 43 C.F.R. § 164 (1970). Tr. 157.

3. As of December 18, 1971, the date of approval of the Alaska Native Claims Settlement Act the Native Village of Klukwan could not have selected the lands involved in this proceeding (Reeves, No. AO62807)—it would have been a legal impossibility under the terms of that Act. Tr. 78, 80.

■ The only issue raised by this motion is whether the Hearings Division and the Interior Board of Land Appeals, *Henry E. Reeves,* 31 IBLA 242, were correct in their conclusion of law that the Secretary of Interior could refuse to modify power site classification (PSC) 439 after the Federal Power Commission determination that the power site value of the lands would not be injured or destroyed by the Reeves homestead entry.

Section 24 of the Federal Power Act, 16 U.S.C. § 818 (1976)[2], provides that lands of

lands of the United States so applied for, or heretofore or hereafter reserved or classified as power sites, will not be injured or destroyed for the purposes of power development by location, entry, or selection under the public-land laws, the Secretary of the Interior, upon notice of such determination, *shall* declare such lands open to location, entry, or selection, for such purpose or purposes and under such restrictions as the Commission *may* determine, subject to and with a reservation of the right of the United States or its permittees or licensees to enter upon, occupy, and use any part or all of said lands necessary, in the judgment of the Commission, for the purposes of this subchapter, which right *shall* be expressly reserved in

the United States included within any proposed project "shall from the date of filing of application therefor be reserved from entry, location, or other disposal under the laws of the United States until otherwise directed by the Commission or by Congress." The statute goes on to provide that:

> Whenever the Commission shall determine that the value of any lands of the United States so applied for, or heretofore or hereafter reserved or classified as power sites, will not be injured or destroyed for the purposes of power development by location, entry, or selection under the public-land laws, the Secretary of the Interior, upon notice of such determination, shall declare such lands open to location, entry, or selection, for such purpose or purposes and under such restrictions as the Commission may determine, subject to and with a reservation of the right of the United States or its permittees or licensees to enter upon, occupy, and use any part or all of said lands necessary, in the judgment of the Commission, for the purposes of this subchapter, which right shall be expressly reserved in every patent issued for such lands; and no claim or right to compensation shall accrue from the occupation or use of any of said lands for said purposes.

> every patent issued for such lands; and no claim or right to compensation *shall* accrue from the occupation or use of any of said lands for said purposes. The United States or any licensee for any such lands hereunder *may* enter thereupon for the purposes of this subchapter, upon payment of any damages to crops, buildings, or other improvements caused thereby to the owner thereof, or upon giving a good and sufficient bond to the United States for the use and benefit of the owner to secure the payment of such damages as *may* be determined and fixed in an action brought upon the bond in a court of competent jurisdiction, said bond to be in the form prescribed by the Commission: *Provided,* That locations, entries, selections, or filings heretofore made for lands reserved as water-power sites, or in connection with water-power development, or electrical transmission *may* proceed to approval or patent under and subject to the limitations and conditions in this section contained: *Provided further,* That before any lands applied for, or heretofore or hereafter reserved, or classified

It is contended by the Secretary that the language "shall declare such lands open to location, entry, or selection" is directory and not mandatory. The Secretary's position is that he retains discretion under the statute to refuse to revoke the power site classification for reasons unrelated to the power site value of the reserved land.

The Interior Board of Land Appeals agreed with the Secretary and found that he

> is given discretionary power by the laws of the United States to restore land to entry only when so doing is consistent with his responsibilities as the administrator of the public domain, and the Secretary's decision *not* to revoke PSC 439 is consistent with this discretionary power.

.  .  .  .  .

In essence, the determination by the FPC is an analysis of its own need of the land and, as such, it is advisory only. It is not a command which the Secretary must obey without regard for other valid concerns which are his exclusive responsibility.

*Henry E. Reeves,* 31 IBLA 242, 260, 261 (1977).

as power sites, are declared open to location, entry, or selection by the Secretary of the Interior, notice of intention to make such declaration *shall* be given to the Governor of the State within which such lands are located, and such State *shall* have ninety days from the date of such notice within which to file, under any statute or regulation applicable thereto, an application for the reservation to the State, or any political subdivision thereof, of any lands required as a right-of-way for a public highway or as a source of materials for the construction and maintenance of such highways, and a copy of such application *shall* be filed with the Federal Power Commission; and any location, entry, or selection of such lands, or subsequent patent thereof, *shall* be subject to any rights granted the State pursuant to such application.

The italics have been added to demonstrate the use of the words "shall" and "may" within the same section.

This court does not agree that the statute allows for an interpretation that the Federal Power Commission determination is merely "advisory" as to the water power value of the land in question. The provision should be interpreted to be mandatory for several reasons: 1) the clear and unambiguous language; 2) the legislative purpose of the statute; and 3) the use of both mandatory and directory verbs in the same statute. *See generally* 2A Sutherland, Statutory Construction, Chapter 57 (1972).

The rather curious judicial doctrine that "shall" sometimes means "may" is not so flexible as to allow this court or the Department of Interior to ignore the clear command of a statute. This court presumes that the verb "shall" is mandatory unless the discretionary character of the statute clearly appears. *Minor v. Mechanic's Bank,* 26 U.S. (1 Pet) 68–69, 7 L.Ed. 47 (1828). 2A Sutherland, Statutory Construction § 57.01 at 413 (1972). No language qualifies the mandatory verb "shall" in this instance.

The purpose of the statute is to reserve for public benefit those water power resources on the public lands. *Chemehuevi Tribe of Indians v. Federal Power Commission,* 420 U.S. 395, 405, 95 S.Ct. 1066, 43 L.Ed.2d 279 (1975). *Montana Power Co. v. Federal Power Commission,* 330 F.2d 781, 782 n.1 (9th Cir. 1964); *United States v. Federal Power Commission,* 191 F.2d 796, 800 (4th Cir. 1951) *aff'd* 345 U.S. 153, 73 S.Ct. 609, 97 L.Ed. 918 (1953). "These enactments expressed general policies and granted broad administrative and investigative power, making the Commission [FPC] the permanent disinterested expert agency of Congress to carry out these policies." *United States v. Federal Power Commission,* 345 U.S. 153, 168, 73 S.Ct. 609, 618, 97 L.Ed. 918 (1953). The statute not only provides for a method of reserving power sites but also provides for a method of determining that the power site value is not so significant that the land should be closed to entry. There is no language in this or any other statute brought to the court's attention that would allow the Secretary to second guess the determination of the land's water power value. The Secretary's power to withdraw the land in order to protect other public values is a different issue and has nothing to do with the Secretary's discretion under 16 U.S.C. § 818.

. Sutherland states that "Where both mandatory and directory verbs are used in the same statute, or in the same section, paragraph, or sentence of a statute, it is a fair inference that the legislature realized the difference in meaning, and intended that the verbs used should carry with them their ordinary meanings." 2A Sutherland, Statutory Construction, § 57.11. *See also United States v. Thoman,* 156 U.S. 353, 359–60, 15 S.Ct. 378, 39 L.Ed. 450 (1895); *Federal Land Bank v. Hansen,* 113 F.2d 82, 83–84 (2nd Cir. 1940). The word "shall" is used in 16 U.S. § 818 ten times while the word "may" is used four times. The context in which the words are used demonstrates that the Congress knew the difference between the two. For example, the first sentence [3] of the section states that lands in a proposed project "shall" be reserved from entry until the Congress or the Commission directs otherwise. The Congress in this sentence has clearly used the mandatory verb and reserved to it or the Commission to determine if the land is to be opened to entry. In the last proviso the statute states that the Secretary of Interior "shall" give notice to the Governor and the State "shall" have ninety days to make application for the land and such application "shall" be filed with the Federal Power Commission. It would be ridiculous to suggest that these provisions allow the Secretary to give notice to the State only if he thought it necessary and that the State could be given less than ninety days to make application for the land. Nor could the Congress have intended to allow the State to file its application with the Bureau of Land Management or the U.S. Forest Service. To interpret the word "shall" as being only directory in these provisions would defeat their purposes.

---

**3.** *See* note 2 *supra.*

On the other hand, the use of the word "may" in referring to the Commission's power to condition the manner in which the lands are to be opened to entry is clearly directory because the Congress could not have intended that restrictions be used in every instance. Likewise the use of the word "may" in the fourth sentence in stating that the United States "may" enter the land for power purposes upon payment of damages to improvements is used in a directory sense also. Certainly the United States is not required to enter the land. In conclusion, an examination of the language of the whole statutory section in which the disputed command to the Secretary is found indicates that the Congress knew the difference between "shall" and "may" and used them with their ordinary meanings.[4]

For the above reasons this court holds that when the Federal Power Commission makes a determination under 16 U.S.C. § 818 that the value of any lands reserved or classified for water power sites will not be injured by an entry under the public land laws, the Secretary of Interior is required by statute to revoke or modify the power site classification within a reasonable period. This does not mean that the Secretary must instantly implement the Commission's decision. In fact, 16 U.S.C. § 818 provides for a ninety day period after notice in which the State can exercise a preference right to the land. This ninety day period would allow the Secretary to determine whether there are any other public values or interests in the land that require the site to be withdrawn from entry under other powers possessed by the Secretary.

■ The Secretary of Interior has attempted to justify his refusal to modify PSC 439 and open the land to the Reeves' entry by contending that the Secretary had the power to withdraw the land from entry in order to protect the land until the claims of Alaskan Natives were resolved. On Oc-

tober 28, 1966, the Tlingit and Haida Indians of Alaska filed Native Protest AA–431 which stated in part, "The Tlingit and Haida Indians claim ownership of said area 6 (6a, 6b, 6c, 6d and 6e), and protest any selections by the State of Alaska or any other claim or interference with their right of occupancy and use within said area." This protest was in part based upon the decision of the Court of Claims in *Tlingit and Haida Indians of Alaska v. United States*, 177 F.Supp. 452, 147 Ct.Cl. 315 (1959) which held that the Indians, as a tribe, had established "aboriginal Indian title to six designated areas on the Alaskan archipelago by their exclusive use and occupancy of that territory from time immemorial." That decision was reaffirmed by the Court of Claims on January 19, 1968. *Tlingit and Haida Indians of Alaska v. United States*, 389 F.2d 778, 182 Ct.Cl. 130 (1968). The Board of Land Appeals stated that, "While the Secretary might have employed another vehicle for preserving the status quo, such as a public land order specifically addressing the land in question, this was unnecessary, as the same result was accomplished by simply refraining from action to open the land." 31 IBLA at 261.

This court does not agree that the Secretary of Interior can justify the refusal to modify a power site classification by referring to other withdrawal powers which he did not use in this instance. The Secretary of Interior possessed in 1967–68 many statutory and inherent powers to withdraw, classify or reserve land to protect Native rights pending Congressional action. *See* the Act of June 25, 1910, 36 Stat. 847 (repealed by Public Law 94–579, October 21, 1976, 90 Stat. 2792) as implemented by Executive Order No. 10355 (May 26, 1952); *United States v. Midwest Oil Co.*, 236 U.S. 459, 35 S.Ct. 309, 59 L.Ed. 673 (1915);[5] *United States v. Consolidated Mines & Smelting Co.*, 455 F.2d 432 (9th Cir. 1971).

---

4. It is also noteworthy that the Department of Interior's regulations repeat the language of the statute and contain no interpretation or provision giving the Secretary discretion under 16 U.S.C. § 818. 43 C.F.R. Part 2340 (1977).

5. The extent to which the *Midwest Oil* doctrine of inherent executive withdrawal powers has been modified by the Federal Land Policy and Management Act of 1976, 43 U.S.C.A. 1701–82 (Supp.1978) has *not* been decided.

But the Secretary did not issue a public land order under any authority which he possessed. The fact that the same result, closure to entry, was reached does not make the refusal to modify PSC 439 any less arbitrary, nor does it change the language of 16 U.S.C. § 818.

It is contended by the Secretary, and the Board of Land Appeals concurred, that to require that a public land order be issued would be to require a useless act. This court does not agree that following this procedure, rather than simply refusing to modify PSC 439, is a useless act. To allow the Secretary to justify a power site classification because Alaskan Native rights had to be protected would permit the Secretary to make a jumble out of the laws governing the public lands. It would also invite arbitrary use of power by the Secretary and inhibit judicial review of the Secretary's actions. There is no relationship in this case between the Secretary's purpose, the protection of Native rights, and the method used, a power site classification. Other admitted powers of the Secretary to protect Native rights are irrelevant in the face of the command of 16 U.S.C. § 818.

The court notes that there are many other issues in this case which are not involved in this motion for partial summary judgment. These issues will have to be resolved by further proceedings in this court before it can be determined that Mr. Reeves has a valid homestead claim.

Accordingly IT IS ORDERED:

THAT plaintiff's motion for partial summary judgment is granted.