770 F.2d 1486
 NATIVE VILLAGE OF STEVENS, Plaintiff-Appellant,
v.
Robert SMITH, in his official capacity as the Commissioner
of Health and Social Services,
William Sheffield, in his official capacity as the Governor
of the State of Alaska, and the State of Alaska,
Defendants-Appellees.
 No. 84-4431.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 6, 1985.
Decided Sept. 12, 1985.
 
 Michael J. Walleri, Fairbanks, Alaska, for plaintiff-appellant.
 D. Rebecca Snow, Fairbanks, Alaska, for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before WRIGHT, Senior Circuit Judge, and POOLE and HALL, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 Appellant Native Village of Stevens (Stevens) sued the Governor of Alaska, the Alaska Commissioner of Health and Social Services and the State of Alaska after Alaska refused to pay foster care maintenance for a child belonging to Stevens. Stevens sought a declaratory judgment that tribally approved foster homes are equivalent to State licensed foster homes for purposes of receiving funds from federally assisted foster care programs, and that the State should make foster care payments under 42 U.S.C. Sec. 672 regardless of the fact that foster care placement is arranged by tribal authority. The district court granted the State's cross-motion for summary judgment and dismissed Stevens's complaint. For reasons set forth below, we affirm.
 
 
 2
 Stevens is an Athabascan Indian tribe. The Tanana Chiefs Conference (Tanana) is a tribal consortium which contracts on behalf of Stevens and other Athabascan Villages for the provision of social service programs, including foster care, for Indian children. On August 10, 1983, a member of Stevens, T.O., was taken into tribal custody by order of the tribal council. With Tanana's assistance, the council placed T.O. with another Athabascan family. The foster home in which he was placed was not licensed by the State for foster care.
 
 
 3
 Tanana, on behalf of Stevens, later sought foster care payments from the State on behalf of T.O. The State refused, asserting that it does not pay for foster care ordered by tribal courts, arranged by other social services agencies, or for children committed to the custody of other agencies. Stevens brought its suit for declaratory relief shortly thereafter.
 
 
 4
 The district court held that Alaska need not recognize Stevens' determinations of eligibility for foster care, that the Indian Child Welfare Act does not require Alaska to reach an agreement concerning foster care with the tribe, and that the State need not grant full faith and credit to the tribe's eligibility determinations.
 
 Standard of Review
 
 5
 The standard of review in this case is de novo, since we are reviewing a grant of summary judgment, Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir.1985), and an issue of statutory construction is involved. Dumdeang v. CIR, 739 F.2d 452, 453 (9th Cir.1984).
 
 The Foster Care Program
 
 6
 Part E of Subchapter IV in Title 42 (Title IV-E) sets forth a federally funded foster care and adoption assistance program. Part E is but one part of Subchapter IV, which establishes the Aid to Families with Dependent Children Program. See generally S.Rep. No. 336, 96th Cong., 2d Sess. 10, reprinted in, 1980 U.S.Code Cong. & Ad.News 1448, 1459. The AFDC program is based upon cooperative federalism--states are not obligated to participate, but if they choose to do so and receive federal funds, they must conform to the requirements of the Social Security Act. King v. Smith, 392 U.S. 309, 316-17, 88 S.Ct. 2128, 2132-33, 20 L.Ed.2d 1118 (1968). Alaska participates in Title IV-E, and it is therefore obligated under 42 U.S.C. Sec. 672 to make foster care maintenance payments for dependent children eligible for AFDC.[1]
 
 
 7
 Congress has established several requirements which must be met before a state is obligated to make foster care payments on behalf of an eligible child:
 
 
 8
 (1) the removal from the home occurred pursuant to a voluntary placement agreement entered into by the child's parent or legal guardian, or was the result of a judicial determination to the effect that continuation therein would be contrary to the welfare of such child * * *
 
 
 9
 (2) such child's placement and care are the responsibility of (A) the State agency administering the State plan * * * or (B) any other public agency with whom the State agency administering or supervising the administration of the State plan approved under section 671 of this title has made an agreement which is still in effect;
 
 
 10
 (3) such child has been placed in a foster family home or child-care institution * * *
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 42 U.S.C. Sec. 672(a). The statute defines both "foster family home" and "child care institution" as institutions licensed by a state. 42 U.S.C. Sec. 672(c). In evaluating Stevens's claim that Alaska should make foster care payments on T.O.'s behalf, we must consider whether the requirements of section 672 have been met.
 
 
 14
 a. Removal from the home
 
 
 15
 T.O. was removed from his home after the tribal council decided it would be in his best interests, and taken into tribal custody. Under section 101(d) of the Indian Child Welfare Act, states are to give full faith and credit to the public acts, records and judicial proceedings of Indian tribes applicable to Indian child custody proceedings. 25 U.S.C. Sec. 1911(d). Therefore, the requirement in section 672(a) that removal be the result of a judicial determination has been met.[2]
 
 
 16
 b. State licensing
 
 
 17
 Section 672(c) defines "foster family home" as one which has been licensed by a state or approved by the state agency responsible for licensing. Alaska has neither licensed nor approved the foster home in which T.O. was placed. However, the Indian Child Welfare Act provides that:
 
 
 18
 [f]or purposes of qualifying for assistance under a federally assisted program, licensing or approval of foster or adoptive homes or institutions by an Indian tribe shall be deemed equivalent to licensing or approval by a State.
 
 
 19
 25 U.S.C. Sec. 1931(b). Congress clearly intended by this section that tribal approval be recognized as equivalent to state licensing or approval. H.R.Rep. No. 1386, 95th Cong., 2d Sess. 26, reprinted in 1978 U.S.Code Cong. & Ad.News 7530, 7549. Therefore, contrary to the district court's determination, a tribally approved foster home is the equivalent to and substitute for state approval or licensing. Section 672(c) has been complied with, since the tribal council approved T.O.'s foster home placement.
 
 
 20
 c. Agreement between Alaska and Stevens
 
 
 21
 The crux of this case is the requirement in section 672(a)(2) that a child's placement be the responsibility of a state agency or a public agency with whom the state has an agreement. Stevens concedes that there is no agreement between it and the State regarding foster care. However, it argues that it unsuccessfully tried to negotiate such an agreement with Alaska, and that 42 U.S.C. Sec. 671(a)(4), as well as 25 U.S.C. Sec. 1919(a) require the State to enter into an agreement. It would have us apply the equitable maxim that equity regards as being done what ought to have been done, e.g., Montana Power Co. v. Federal Power Commission, 330 F.2d 781, 788 (9th Cir.1964), and presume that an agreement existed between the parties.
 
 
 22
 Section 671(a)(4) provides that in order for a state to receive federal funds to operate a foster care maintenance program, it must have a plan which
 
 
 23
 provides that the State shall assure that the programs at the local level assisted under this part will be coordinated with the programs at the State or local level assisted under parts A and B of this subchapter, under subchapter XX of this chapter, and under any other appropriate provision of Federal law.
 
 
 24
 Stevens reads this section to require Alaska to coordinate its Title IV-E foster care program with the foster care program operated by Tanana and funded by the Bureau of Indian Affairs, and it maintains that coordination requires an agreement between the State and the tribe.
 
 
 25
 We disagree. Nothing in section 671(a)(4) requires the State involuntarily to enter into an agreement concerning foster care services with Stevens. Moreover, Stevens' sole evidence of a lack of coordination is the absence of an agreement between it and the State. There is no indication of competition or interference between the tribe and the State. The State declined to pay for T.O.'s foster care because he was in the tribe's custody; it did offer to accept referral of T.O. and his family and to assess their eligibility for services offered by the State.
 
 
 26
 It is true that section 109 of the Indian Child Welfare Act authorizes agreements between states and tribes respecting the care of Indian children:
 
 
 27
 States and Indian tribes are authorized to enter into agreements with each other respecting care and custody of Indian children and jurisdiction over child custody proceedings, including agreements which may provide for orderly transfer of jurisdiction on a case-by-case basis and agreements which provide for concurrent jurisdiction between States and Indian tribes.
 
 
 28
 25 U.S.C. Sec. 1919(a). But section 1919 does not require entry into state-tribal agreements--it simply authorizes them. See also, H.R.Rep. 1386, 95th Cong., 2d Sess. 25, reprinted in 1978 U.S.Code Cong. & Ad.News 7530, 7547. Examination of the statute indicates that it is permissive.
 
 
 29
 As we previously observed, states choosing to participate in the AFDC program must conform to the requirements of the Social Security Act, as well as rules and regulations promulgated by the Department of Health and Human Services. King v. Smith, 392 U.S. at 316-17, 88 S.Ct. 2132-33. Indeed, a state risks losing federal funds if its plan for foster care does not comply with the statute. 42 U.S.C. Sec. 671(b). Thus, the threatened loss of federal funds provides states with a powerful incentive for compliance with the mandatory requirements of the statutory scheme. When Congress wishes to compel action by a state, it does not hesitate to do so.
 
 
 30
 In contrast, neither 42 U.S.C. Sec. 671(a)(4) nor 25 U.S.C. Sec. 1919(a) require states and tribes to enter into foster care agreements under section 672(a)(2)(B). These statutes are not cast in mandatory terms. It may be more consonant with the statutory spirit to undertake such an agreement, but Congress did not provide that a state or a tribe has the right to force an agreement upon the other. For whatever reason, Alaska does not wish to negotiate an agreement with Stevens concerning foster care. As a federal court, we interpret statutes as they are written--the statutes at issue here do not mandate an agreement, and it is not our role to force Alaska to enter into one. Should Stevens desire different statutory language that compels an agreement, recourse to Congress would be appropriate.
 
 
 31
 We therefore decline to infer the existence of an agreement between Stevens and Alaska under 42 U.S.C. Sec. 672(a)(2)(B). The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 According to 42 U.S.C. Sec. 672, states shall make foster care maintenance payments with respect to children who would meet the requirements of sections 606(a) or 607. Sections 606(a) and 607 define the term "dependent child" for purposes of receiving AFDC benefits. The State notes that it has never determined whether T.O. is a "dependent child" under 42 U.S.C. Secs. 606(a) or 607 and eligible for foster care maintenance. This is not a material factual issue rendering summary judgment inappropriate, since the State's policy would deny foster care to Indian children placed by a tribe regardless of AFDC eligibility
 
 
 [2]
 On appeal, the State suggests that this requirement in section 672(a)(1) has not been met. It argues that T.O. may have been removed from his home due to a judicial determination by the tribe, or as a result of a voluntary placement agreement created when his parents consented to the village assuming custody. In either case, section 672(a)(1) would be satisfied. Moreover, the State conceded in district court that section 672(a)(1) had been met