ANDERSON, DIRECTOR, CALIFORNIA DEPART-
MENT OF SOCIAL SERVICES, ET AL. *v.*
EDWARDS, GUARDIAN AD LITEM FOR
EDWARDS, ET AL.

No. 93–1883.   Argued January 18, 1995—Decided March 22, 1995

THOMAS, J., delivered the opinion for a unanimous Court.

*Dennis Paul Eckhart,* Supervising Deputy Attorney General of California, argued the cause for petitioners. With him on the briefs were *Daniel E. Lungren,* Attorney General, *Charlton G. Holland III,* Assistant Attorney General, and *G. Mateo Muñoz,* Deputy Attorney General.

*Paul A. Engelmayer* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Days, Assistant Attorney General Hunger, Deputy Solicitor General Kneedler, William Kanter,* and *Howard S. Scher.*

*Katherine E. Meiss* argued the cause for respondents. With her on the brief were *Alice Bussiere, Patrice E. McElroy, Jodie Berger,* and *Paul Lee.**

JUSTICE THOMAS delivered the opinion of the Court.

This case presents the question whether federal law governing the Aid to Families with Dependent Children (AFDC) program prohibits States from grouping into a single AFDC

---

*Briefs of *amici curiae* urging reversal were filed for the State of Minnesota et al. by *Hubert H. Humphrey III,* Attorney General of Minnesota, and *LauraSue Schlatter,* Assistant Attorney General, and by the Attorneys General for their respective jurisdictions as follows: *Richard Blumenthal* of Connecticut, *Scott Harshbarger* of Massachusetts, *G. Oliver Koppell* of New York, *Michael F. Easley* of North Carolina, *Theodore R. Kulongoski* of Oregon, *Ernest D. Preate, Jr.,* of Pennsylvania, *Jeffrey B. Pine* of Rhode Island, *Jeffrey L. Amestoy* of Vermont, *Rosalie Simmonds Ballentine* of the Virgin Islands, and *James S. Gilmore III* of Virginia; for the State of Nevada et al. by *Frankie Sue Del Papa,* Attorney General of Nevada, and *John Albrecht,* Deputy Attorney General, *Bruce M. Botelho,* Attorney General of Alaska, *Vanesa Ruiz,* Corporation Counsel of the District of Columbia, *Robert A. Butterworth,* Attorney General of Florida, *Donald L. Paillette,* Acting Attorney General of Guam, *Robert A. Marks,* Attorney General of Hawaii, *Roland W. Burris,* Attorney General of Illinois, *Joseph P. Mazurek,* Attorney General of Montana, *Deborah T. Poritz,* Attorney General of New Jersey, *Susan B. Loving,* Attorney General of Oklahoma, *Jeffrey B. Pine,* Attorney General of Rhode Island, *Mark W. Barnett,* Attorney General of South Dakota, and *Joseph B. Meyer,* Attorney General of Wyoming; for the Council of State Governments et al. by *Richard Ruda* and *Lee Fennell;* and for the Pacific Legal Foundation by *Ronald A. Zumbrun* and *John H. Findley.*

Briefs of *amici curiae* urging affirmance were filed for the Alliance for Children's Rights et al. by *Charles N. Freiberg* and *David B. Goodwin;* and for the American Association of Retired Persons by *Steven S. Zaleznick* and *Michael Schuster.*

"assistance unit" all needy children who live in the same household under the care of one relative. Such grouping allows States to grant equal assistance to equally sized needy households, regardless of whether the children in the household are all siblings. The Court of Appeals for the Ninth Circuit concluded that federal law forbids States to equalize assistance in this manner. We disagree and accordingly reverse.

I

AFDC is a joint federal-state public assistance program authorized by Title IV–A of the Social Security Act, 49 Stat. 627, 42 U. S. C. § 601 *et seq.* (1988 ed. and Supp. V). As its name indicates, the AFDC program "is designed to provide financial assistance to needy dependent children and the parents or relatives who live with and care for them." *Shea* v. *Vialpando,* 416 U. S. 251, 253 (1974). The program "reimburses each State which chooses to participate with a percentage of the funds it expends," so long as the State "administer[s] its assistance program pursuant to a state plan that conforms to applicable federal statutes and regulations." *Heckler* v. *Turner,* 470 U. S. 184, 189 (1985) (citing 42 U. S. C. §§ 602, 603).

One applicable federal rule requires state plans to provide that all members of a nuclear family who live in the same household must apply for AFDC assistance if any one of them applies; in addition, the income of all of these applicants must be aggregated in determining their eligibility and the amount of their monthly benefits. See 42 U. S. C. § 602(a)(38) (1988 ed., Supp. V); 45 CFR § 206.10(a)(1)(vii) (1993). See generally *Bowen* v. *Gilliard,* 483 U. S. 587 (1987) (upholding rule against constitutional challenges). This "family filing unit rule" requires that all cohabiting nuclear family members be grouped into a single AFDC "assistance unit" (AU), defined by federal law as "the group of individuals whose income, resources and needs are considered as a unit for purposes of determining eligibility and the amount

of payment." 45 CFR § 206.10(b)(5) (1993). The regulation at issue in this case—California's "non-sibling filing unit rule" (California Rule)—goes even further in this regard. It provides: "Two or more AUs in the same home shall be combined into one AU when . . . [t]here is only one [adult] caretaker relative." Cal. Dept. of Social Servs., Manual of Policies & Procedures § 82–824.1.13, App. to Pet. for Cert. 52. In other words, the California Rule groups into a single AU all needy children who live in the same household, whether or not they are siblings, if there is only one adult caring for all of them.

The consolidation of two or more AU's into a single AU pursuant to the California Rule results in a decrease in the maximum per capita AFDC benefits for which the affected individuals are eligible. This occurs because, while California (like many States) increases the amount of assistance for each additional person added to an AU, the increase is not proportional. Thus, as the number of persons in the AU increases, the per capita payment to the AU decreases.[1]

---

[1] Between July 1, 1989, and August 31, 1991, California adhered to the following schedule of maximum monthly AFDC payments:

| Number of persons in AU | Maximum aid payment | Per capita payment |
|---|---|---|
| 1 | $ 341 | $341.00 |
| 2 | 560 | 280.00 |
| 3 | 694 | 231.33 |
| 4 | 824 | 206.00 |
| 5 | 940 | 188.00 |
| 6 | 1,057 | 176.17 |
| 7 | 1,160 | 165.71 |
| 8 | 1,265 | 158.13 |
| 9 | 1,366 | 151.78 |
| 10 or more | 1,468 | 146.80 |

Joint Statement of Undisputed Material Facts in Support of Plaintiffs' Motion for Summary Judgment in No. CV–S 91 1473 (ED Cal.), p. 7 (Feb. 13, 1992). Cf. *Dandridge* v. *Williams*, 397 U. S. 471, 488 (1970) (reproducing similar Maryland schedule.) The current schedule is set forth in

See, *e. g., Dandridge* v. *Williams,* 397 U. S. 471, 473–474 (1970) (sustaining a Maryland AFDC regulation under which "the standard of need increases with each additional person in the household, but the increments become proportionately smaller").

The situation of respondent Verna Edwards and her relatives illustrates the operation of these two rules. Initially, Mrs. Edwards received AFDC assistance on behalf of her granddaughter, for whom she is the sole caretaker.[2] As a one-person AU, the granddaughter was eligible to receive a "maximum aid payment" of $341 per month prior to September 1991. See n. 1, *supra.* Later, Mrs. Edwards began caring for her two grandnieces, who are siblings. Pursuant to the federal family filing unit rule, the grandnieces are grouped together in a two-person AU, which was eligible to receive $560 per month in benefits prior to September 1991. See *ibid.* Because none of these children received any outside income, Mrs. Edwards received $901 per month in AFDC assistance on behalf of the three girls. In June 1991, however, Mrs. Edwards received notice that pursuant to the California Rule, her granddaughter and two grandnieces would be grouped together into a single three-person AU, which was eligible to receive only $694 per month. See *ibid.* The California Rule thus reduced AFDC payments to the Edwards household by $207 per month.

On behalf of themselves and others similarly situated, Mrs. Edwards, her three relatives, and other respondents brought this action against petitioners, the state officials charged with administering California's AFDC program, in the Dis-

---

Cal. Welf. & Inst. Code Ann. § 11450(a)(1) (West Supp. 1994), as modified by §§ 11450.01(a), (b) and 11450.015(a).

[2] Mrs. Edwards does not receive AFDC assistance for herself. As explained in the text, the family filing unit rule requires parents to apply for assistance along with their children. But apart from this rule, caretaker relatives need not apply for assistance along with the needy children for whom they care, although they may do so.

trict Court for the Eastern District of California. Pursuant to Rev. Stat. § 1979, 42 U. S. C. § 1983, respondents sought a declaration that the California Rule violates federal law and an injunction prohibiting petitioners from enforcing it. On cross-motions for summary judgment, the District Court granted the requested relief. It found the California Rule indistinguishable in relevant respects from the Washington regulation invalidated in *Beaton* v. *Thompson*, 913 F. 2d 701 (CA9 1990).

In a brief opinion, the Court of Appeals for the Ninth Circuit affirmed. It found the California Rule "virtually identical" to the Washington regulation that *Beaton* had held to be "inconsistent with federal law and regulation." *Edwards* v. *Healy*, 12 F. 3d 154, 155 (1993). Since the Court of Appeals issued its decision, the Department of Health and Human Services (HHS)—which administers the AFDC program on the federal level—determined that its own AFDC regulations "do not conflict with the State policy option to consolidate assistance units in the same household." Transmittal No. ACF–AT–94–6 (Mar. 16, 1994), App. to Pet. for Cert. 37. Moreover, a number of Federal Courts of Appeals and state courts of last resort have recently issued rulings at odds with the decision below.[3] We granted certiorari to resolve this conflict, 512 U. S. 1288 (1994), and we now reverse.

## II

In *Beaton*, the Ninth Circuit ruled that grouping into the same AU all needy children (both siblings and nonsiblings alike) who live in the same household is inconsistent with three different federal AFDC regulations, namely, 45 CFR §§ 233.20(a)(2)(viii), 233.20(a)(3)(ii)(D), and 233.90(a)(1)

---

[3] See *Bray* v. *Dowling*, 25 F. 3d 135 (CA2 1994) (New York policy), cert. pending, No. 94–5845; *Wilkes* v. *Gomez*, 32 F. 3d 1324 (CA8 1994) (Minnesota rule), cert. pending, No. 94–6929; *MacInnes* v. *Commissioner of Public Welfare*, 412 Mass. 790, 593 N. E. 2d 222 (1992); *Morrell* v. *Flaherty*, 338 N. C. 230, 449 S. E. 2d 175 (1994).

(1993).[4]  See *Beaton, supra,* at 704.   Respondents rely principally on these three regulations in their submission here.

As we examine the regulations, we keep in mind that in AFDC cases, "the starting point of the . . . analysis must be a recognition that . . . federal law gives each State great latitude in dispensing its available funds." *Dandridge, supra,* at 478.   Accord, *Shea,* 416 U. S., at 253 (States "are given broad discretion in determining both the standard of need and the level of benefits").   In light of this cardinal

---

[4] Section 233.20(a)(2)(viii) provides:

"[T]he money amount of any need item included in the standard will not be prorated or otherwise reduced solely because of the presence in the household of a non-legally responsible individual; and the [state] agency will not assume any contribution from such individual for the support of the assistance unit . . . ."

Section 233.20(a)(3)(ii) provides in part:

"[I]n determining need and the amount of the assistance payment, . . . :

.          .          .          .          .

"(D) Income . . . and resources available for current use shall be considered.   To the extent not inconsistent with any other provision of this chapter, income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance."

Section 233.90(a)(1) provides:

"The determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his or her parent who is the principal earner will be made only in relation to the child's natural or adoptive parent, or in relation to the child's stepparent who is married, under State law, to the child's natural or [adoptive] parent and is legally obligated to support the child under State law of general applicability which requires stepparents to support stepchildren to the same extent that natural or adoptive parents are required to support their children.   Under this requirement, the inclusion in the family, or the presence in the home, of a 'substitute parent' or 'man-in-the-house' or any individual other than one described in this paragraph is not an acceptable basis for a finding of ineligibility or for assuming the availability of income by the State . . . ."

principle, we conclude that the federal regulations do not preclude the adoption of the California Rule.

## A

According to § 233.20(a)(2)(viii), States may not reduce the amount of assistance for which AFDC applicants are eligible "solely because of the presence in the household of a non-legally responsible individual." Using the example of Mrs. Edwards and her relatives, respondents observe that, although the granddaughter received AFDC benefits of $341 per month before the two grandnieces came to live in Mrs. Edwards' household, she received only one-third of $694, or $231.33, per month after the grandnieces arrived and the California Rule took effect. See Brief for Respondents 6, 22. This reduction in the granddaughter's per capita benefits occurred, according to respondents, "solely because of the presence in the household of" the grandnieces, who are "non-legally responsible individual[s]" in relation to the granddaughter.

Respondents are simply wrong. It was not *solely* the presence of the grandnieces that triggered the decline in per capita benefits paid to the granddaughter; rather, it was the grandnieces' presence *plus* their application for AFDC assistance through Mrs. Edwards. Had the two grandnieces, after coming to live in Mrs. Edwards' home, either not applied for assistance or applied through a different caretaker relative living in that home, the California Rule would not have affected the granddaughter's benefits at all.[5]

---

[5] Although needy children will receive less in per capita benefits under the California Rule, this reduction affects only children who share a household. California is simply recognizing the economies of scale that inhere in such living arrangements. See, *e. g., Bowen* v. *Gilliard,* 483 U. S. 587, 599 (1987) (crediting "'the common sense proposition that individuals living with others usually have reduced per capita costs because many of their expenses are shared'" (quoting *Termini* v. *Califano,* 611 F. 2d 367, 370 (CA2 1979))).

## B

Respondents also argue that the California Rule violates the "availability" principle, which is implemented, in one form or another, by all three federal regulations. Section 233.90(a)(1) provides that "the inclusion in the family, or the presence in the home, of a 'substitute parent' or 'man-in-the-house' or any individual other than [the child's parent] is not an acceptable basis for . . . assuming the availability of income" to a needy child. Likewise, § 233.20(a)(2)(viii) provides that States may "not assume any contribution from [a nonlegally responsible] individual for the support of the assistance unit." Finally, § 233.20(a)(3)(ii)(D) provides generally that States shall, "in determining need and the amount of the assistance payment," count only "[i]ncome . . . and resources available for current use"; the regulation adds that "income and resources are considered available both when actually available and when [legally available]."

According to respondents, the California Rule assumes that income from relatives is contributed to, or otherwise available to, a needy child without a determination that it is actually available. If Mrs. Edwards' granddaughter were to begin receiving $75 per month in outside income, for example, the AU of which she is a part would receive $75 less in monthly AFDC benefits, and the two grandnieces would each accordingly receive $25 less in per capita monthly benefits. Thus, the California Rule assertedly "assumes," in violation of all three federal regulations, that the granddaughter will contribute $25 per month of her outside income to each grandniece and also that such income will therefore be available to each grandniece—without a case-specific determination that such contribution will in fact occur.

Respondents' argument fails for at least two reasons. First, its premise is questionable. Although in this example, the grandnieces each will *nominally* receive $25 less in per capita monthly benefits, they will *actually* receive less in benefits only if one assumes that Mrs. Edwards will expend

an equal amount of AFDC assistance on each of the three children—without regard to any other relevant circumstances, such as whether one of them receives outside income. Not only would such assumption fail to reflect reality, see, *e. g., Gilliard,* 483 U. S., at 600, n. 14, it would also be inconsistent with the duty imposed on caretakers by federal law to spend AFDC payments "in the best interests of the child[ren]" for whom they care, 42 U. S. C. § 605, a duty specifically implemented by California law, see, *e. g.,* Cal. Welf. & Inst. Code Ann. §§ 11005.5, 11480 (West 1991). Thus, California may rationally assume that a caretaker will observe her duties to all the members of the AU and will take into account the receipt of any outside income by one child when expending funds on behalf of the AU.

Second, respondents' argument misperceives the operation of the California Rule. In the foregoing example, California would simply add the monthly income of all members of the AU—$75 (granddaughter) plus $0 (first grandniece) plus $0 (second grandniece) for a total of $75—and reduce the monthly assistance payment to the Edwards family AU accordingly. It should be clear from this example that the monthly payment to the AU is reduced not because the California Rule "assumes" that any income is available to the grandnieces, but because it places the two grandnieces into the same AU as the granddaughter (whose income is actually available to herself). What respondents are really attacking is the rule that the income of all members of the AU is combined in order to determine the amount of the assistance payment to the AU. This attack ignores the very definition of an AU: the group of individuals whose income and resources are considered "as a unit" for purposes of determining the amount of the assistance payment. 45 CFR § 206.10(b)(5) (1993). Accord, Brief for Respondents 4 ("All of the income and resources of everyone in the assistance unit are taken into consideration in establishing the benefit payment").

154

Perhaps respondents are arguing that the regulations simply forbid California to combine the incomes of all needy children in a household—whether by grouping them into the same AU or otherwise. But whatever are the limits that federal law imposes on States' authority in this regard, the combination of incomes effected by the California Rule is authorized by the AFDC statute itself, which provides that a state agency "shall, in determining need, take into consideration any . . . income and resources of any child or relative claiming [AFDC assistance]." 42 U. S. C. § 602(a)(7)(A) (1988 ed. and Supp. V). In light of the "great latitude," *Dandridge*, 397 U. S., at 478, and the "broad discretion," *Shea*, 416 U. S., at 253, that States have in administering their AFDC programs, this statute is reasonably construed to allow States, in determining a child's need (and therefore how much assistance she will receive), to take into consideration the income and resources of all cohabiting children and relatives also claiming AFDC assistance.

The availability regulations are addressed to an entirely different problem, namely, the counting of income and resources controlled by persons outside the AU for the purpose of determining the amount of assistance to be provided to the AU. The regulations were adopted to implement our decisions in three AFDC cases. See 42 Fed. Reg. 6583–6584 (1977) (citing *King* v. *Smith*, 392 U. S. 309 (1968); *Lewis* v. *Martin*, 397 U. S. 552 (1970); *Van Lare* v. *Hurley*, 421 U. S. 338 (1975)). In all three cases, the State had counted as available to the AU income that was not actually or legally available because it was controlled by a person who was not a member of the AU and who was not applying for AFDC assistance. See *King, supra,* at 311 (a " 'substitute father,' " defined as any able-bodied man who cohabited with the mother of the needy children in or outside her home); *Lewis, supra,* at 554 ("an adult male person assuming the role of spouse to the mother," such as a common-law husband, or a

nonadopting stepfather not legally obligated to support the children); *Van Lare, supra,* at 339, 340 (a "nonpaying lodge[r]," who was "a person not a recipient of AFDC"). Accord, *Bray* v. *Dowling,* 25 F. 3d 135, 144 (CA2 1994) (the federal availability regulations "were established to address specific concerns regarding the imputation of income from non-AFDC sources"), cert. pending, No. 94–5845.

The California Rule has no such effect. The combined income of the three-person AU comprising the granddaughter and two grandnieces of Mrs. Edwards is not calculated with reference to the income either of Mrs. Edwards herself or of anyone else inside or outside the Edwards household who is not a member of the AU and who is not applying for AFDC assistance. In sum, the California Rule does not violate any of the three federal regulations on which the Court of Appeals relied.[6]

---

[6] We are aware that in certain situations in which a member of a consolidated AU begins to receive outside income (such as monthly child support payments, an inheritance, or even lottery winnings), the household would receive a larger AFDC monthly payment if the recipient (along with all members of her nuclear family, as required by the federal family filing unit rule) terminated her participation in the AFDC program. See, *e. g., Gilliard,* 483 U. S., at 591 (citing example from prior to federal rule's adoption). Were California law to forbid a person to "opt out" of the AFDC program in these situations, it might be said that the State had reduced AFDC assistance to the AU's remaining members based solely on the presence or the income of a person who is not applying for such assistance.

We find it unnecessary to determine whether California law ever forbids a person who begins receiving outside income to opt out of the AFDC program. Certainly, nothing in the California Rule itself speaks to this issue. Furthermore, because respondents challenged the California Rule on its face by seeking to enjoin its enforcement altogether, see First Amended Complaint in No. CV–S 91 1473 (ED Cal.), pp. 16–17 (Jan. 10, 1992), they could not sustain their burden even if they showed that a possible application of the rule (in concert with another statute or regulation) violated federal law. See *United States* v. *Salerno,* 481 U. S. 739, 745 (1987) (a facial challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances ex-

## III

Respondents offer two alternative grounds to support the judgment below. Neither has merit, and we may dispose of them quickly.

First, respondents argue that the California Rule is an invalid expansion of the family filing unit rule, 42 U. S. C. § 602(a)(38). According to respondents, when Congress decreed that all members of a nuclear family must be grouped together in a single AU, it intended to prevent States from including any additional persons in that AU (as does the California Rule). We reject the notion that Congress' directive regarding the composition of assistance units "occupied the field" and thereby pre-empted States from adopting any additional rules touching this area. What we said about "workfare" in *New York State Dept. of Social Servs.* v. *Dublino*, 413 U. S. 405, 414 (1973), applies here as well: "If Congress had intended to pre-empt state plans and efforts in such an important dimension of the AFDC program . . . , such intentions would in all likelihood have been expressed in direct and unambiguous language." The language of § 602(a)(38) requires States to embrace the family filing unit rule; it does not further limit States' discretion in a direct or unambiguous manner.

Second, respondents argue that the California Rule violates two other federal regulations that require equitable treatment among AFDC recipients. See 45 CFR § 233.10(a)(1) (1993) ("[T]he eligibility conditions imposed . . . must not result in inequitable treatment of individuals or groups"); § 233.20(a)(1)(i) ("[T]he determination of need and amount of assistance for all applicants [must] be made on an objective and equitable basis"). Assuming that these provisions even "creat[e] a 'federal right' that is enforceable under

---

ists under which the [rule] would be valid"). Though an as-applied challenge that presented the opt-out issue in a concrete factual setting might require a court to decide it, such a challenge is not now before us.

[42 U. S. C.] § 1983," *Wilder* v. *Virginia Hospital Assn.*, 496 U. S. 498, 509 (1990), we find that the California Rule affirmatively fosters equitable treatment among AFDC recipients.

For example, prior to September 1991 a caretaker relative responsible for three brothers having no outside income would have received AFDC benefits of $694 per month on their behalf. Yet before the California Rule was applied to her household, Mrs. Edwards received monthly benefits of $901 for the three girls for whom she cared. See *supra*, at 148. The $207 difference is due solely to the fact that in one household all of the children are siblings, while in the other they are not. The potential *in*equities in the absence of the California Rule are even greater. Six needy siblings living in the same household in California could have received up to $1,057 per month in benefits before September 1991. But prior to the California Rule's adoption, six needy nonsiblings who lived in the same household could have received as much as $2,046, or almost double. See n. 1, *supra*. The California Rule sensibly and equitably eliminates these disparities by providing that equally sized and equally needy households will receive equal AFDC assistance. Thus, the rule does not violate the equitable treatment regulations.[7]

---

[7] In its 1994 Transmittal, see *supra*, at 149, HHS examined all of the federal AFDC rules at issue in this case—the three availability regulations, the statutory family filing unit rule, and the equitable treatment regulations. The agency concluded: "Apart from complying with [the family filing unit rule and a related rule], States are authorized to set the State-wide policy, to be applied in all cases, whether and under what conditions two or more assistance units in the same household are to be consolidated or retained as separate units." App. to Pet. for Cert. 35. Because we have independently reached the same conclusion, we have no occasion to decide whether we must defer to the agency's position. Cf. *Martin* v. *Occupational Safety and Health Review Comm'n*, 499 U. S. 144, 150 (1991) ("It is well established 'that an agency's construction of its own regulations is entitled to substantial deference'" (quoting *Lyng* v. *Payne*, 476 U. S. 926, 939 (1986))).

*   *   *

For the foregoing reasons, we conclude that the California Rule does not violate federal law. Accordingly, the judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*