**Deena JENKINS, Individually and on behalf of others similarly situated, Plaintiff–Appellee,**

v.

**Charles M. PALMER, Director, Iowa Department of Human Services, Defendant–Appellant.**

No. 94–3771.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1995.

Decided Aug. 14, 1995.

Barbara E.B. Galloway, argued, Des Moines, IA (Bonnie J. Campbell, Atty. Gen. of IA, and Gordon E. Allen, Deputy Atty. Gen. of IA, on brief), for appellant.

Linnea M. Nelson, argued, Sioux City, IA (Martin Ozga, Des Moines, IA, on brief), for appellee.

Before LOKEN, Circuit Judge, FRIEDMAN * Senior Circuit Judge, and HENLEY, Senior Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

This case involves the validity of an Iowa requirement that in order to receive payments under the Federal Aid to Families with Dependent Children—Unemployed Parent program, the biological father of the child with which he is living must first establish his paternity in a judicial proceeding. We hold that, as applied in this case, the Iowa requirement was invalid.

## I.

A. The AFDC program was established under the Social Security Act in 1935 "to provide welfare payments where children are needy because of the death, absence, or incapacity of a parent." *Batterton v. Francis,* 432 U.S. 416, 418, 97 S.Ct. 2399, 2402, 53 L.Ed.2d 448 (1977). The AFDC–UP provision was initially introduced in 1961 on an experimental basis "to provide assistance in

---

* DANIEL M. FRIEDMAN, of the United States Court of Appeals for the Federal Circuit, sitting by designation.

some cases where the unemployment of a parent causes dependent children to be needy," and was made permanent in 1968. *Id.* at 419, 97 S.Ct. at 2403.

"Both AFDC and AFDC–UP are cooperative ventures of the Federal Government and the States. States that elect to participate in these programs administer them under federal standards and HEW supervision. Funding is provided from state and federal revenues on a matching basis." *Id.* at 420, 97 S.Ct. at 2403. "The program is administered by state agencies, which submit plans to the federal government for the Secretary's approval. The federal government then reimburses the state for a portion of the funding of the program." *Gorrie v. Bowen,* 809 F.2d 508, 511 (8th Cir.1987) (citation omitted).

"The AFDC program provides assistance to dependent children who meet certain age requirements, 432 U.S. at 419, 97 S.Ct. at 2402 (discussing § 606(a)(2)), and who are 'deprived of parental support or care.'" *Id.* (citations omitted). The Act defines "dependent child" as "a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home ... or physical or mental incapacity of a parent, and who is living with his father, mother ... in a place of residence maintained by one or more of such relatives as his or their own home." 42 U.S.C. § 606(a) (1988). The term is further defined in § 607, captioned "Dependent children of unemployed parents," to include

a needy child who meets the requirements of section 606(a)(2) of this title, who has been deprived of parental support or care by reason of the unemployment (as determined in accordance with standards prescribed by the Secretary) of the parent who is the principal earner, and who is living with any of the relatives specified in section 606(a)(1) of this title in a place of residence maintained by one or more of such relatives as his (or their) own home.

42 U.S.C. § 607(a).

The Secretary of Health and Human Services has promulgated a regulation prescribing that state plans implementing the AFDC program must provide that:

The determination whether a child has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, or (if the State plan includes such cases) the unemployment of his or her parent who is the principal earner will be made only in relation to the child's natural or adoptive parent....

45 C.F.R. § 233.90.

Iowa participates in the AFDC–UP program. Iowa has promulgated an administrative code that governs the provision of AFDC–UP benefits. The code states that benefits will be paid to

Any natural or adoptive parent of such child, if the parent is living in the same home as the dependent child. Paternity of the biological father shall be established by the court before a father who is not the legal father of the child is added to the eligible group.

441 Iowa Administrative Rule 41.8(1)(a).(2)

█ Iowa law presumes that a child conceived during marriage is legitimate, Iowa code § 598.31, but the presumption is rebuttable. *Metallo v. Musengo,* 353 N.W.2d 872, 875 (Iowa Ct.App.1984).

B. The underlying facts are stipulated.

On October 4, 1989, the appellee Deena Jenkins was divorced from her then husband, Michael O. Lossiah. At the divorce hearing she was four months pregnant by someone other than her husband. On March 1, 1990, she gave birth to a son, Jesse Lee. Jesse's birth certificate listed Jody Arnold Jenkins as the father. "At all times relevant to this case, Deena and Jody have been willing to admit to Jody's paternity of Jesse." On October 20, 1990 Deena and Jody Jenkins were married.

The Jenkins applied for and were approved by the Iowa Department of Human Services for benefits under the AFDC–UP program. They received payments for May and June 1991 for a three member unit comprising Deena, her son and her husband.

Subsequently, however, the Iowa Department concluded that it had improperly included Jody in the family unit because he

was not Jesse's legal father. The Department ruled that there had been an overpayment of $65 a month for each of those two months (representing the amount paid to Jody). Deena Jenkins filed an administrative appeal from that ruling with the Iowa Department, but the Department's Director, the appellant Palmer, rejected the appeal on the ground that under the Department's administrative rules, "the 'paternity of the biological father shall be established by the court before a father who is not the legal father of the child is added to the eligible group.'"

While the administrative appeal was pending, an Iowa state court entered an order declaring that Jody Jenkins was the father of Jesse.

C. Deena Jenkins then filed the present class action under 42 U.S.C. § 1983 against Palmer in the United States District Court for the Northern District of Iowa. She alleged that the state policy "of requiring paternity to be determined exclusively by the courts" violated the AFDC Act. She sought declaratory and injunctive relief.

The district court certified a class comprising all persons who since July 1, 1990 "have been denied AFDC–UP benefits because the natural father was not the legal father and did not have a court order establishing paternity."

On cross motions for summary judgment, the district court ** granted the plaintiffs' motion and denied the defendant's. The court ruled that the Iowa requirement that a court order establishing paternity as a condition to a father receiving AFDC–UP benefits improperly added an additional eligibility requirement for benefits to those that the Social Security Act provided. The court declared that the state's "policy of requiring putative fathers of children conceived while the mother was married to another man to obtain court orders to establish paternity for AFDC–UP eligibility purposes is invalid," and that there was no overpayment of benefits "with respect to Deena Jenkins."

The court also enjoined the defendant "from requiring AFDC–UP applicants to obtain court orders to establish paternity for AFDC–UP eligibility purposes where the applicant is a putative father of a child conceived while the mother was married to another man." It directed the defendant "to review its files and determine who the class members are who were either denied benefits or who received alleged overpayments of AFDC–UP because they failed to establish paternity of the putative father. The Defendant is to send notice to the named plaintiff and all class members informing them of their right to seek relief through administrative channels for AFDC–UP benefits that were wrongfully denied due to defendant's illegal policy."

**II.**

■ A. The definition of dependent child in § 607(a) is a needy child "who has been deprived of parental support or care by reason of the unemployment ... of a parent who is the principle earner" and who meets the residence requirement there stated. The Act does not define "parent." The Secretary's regulation, however, provides that "[t]he determination of whether a child has been deprived of parental support or care by reason of ... the unemployment of his or her parent will be made only in relation to the child's natural or adoptive parent...." Similarly, the Iowa administrative code provides that AFDC–UP benefits will be paid to "any natural or adoptive parent" of a dependent child living in the same home as the child.

The "natural" father of a child commonly is understood to mean the child's biological father. There is no indication that the Secretary (or the state of Iowa) intended the term to have other than its usual meaning. As implemented by the regulation, therefore, the Act provides that AFDC–UP benefits are to be paid to two categories of male parents: the biological father and the adoptive father.

In the present case Jody Jenkins unquestionably is the biological father of Jesse. He was identified as the father on Jesse's birth

** Honorable Michael J. Melloy, Chief United States District Judge for the Northern District of Iowa.

certificate. Deena and Jody admitted his paternity. In a consent order in which the state of Iowa ex rel Jesse was the petitioner and Jody Jenkins the respondent, it was decreed that Jody "is legally and officially established as the father of" Jesse. Although that order was entered almost 18 months after Jesse's birth, the determination of paternity cannot be viewed as prospective only. If, as the order determined, Jody Jenkins is Jesse's biological father, he was such from the date of Jesse's birth.

B. Under both the federal statute and the Iowa administrative regulation, Jody thus was the natural biological father of Jesse and therefore was entitled to receive AFDC–UP benefits. The narrow question before us is whether Iowa validly denied Jody those benefits for the two months at issue on the ground that at that time his paternity had not been judicially established.

Relying on the statement in *King v. Smith,* 392 U.S. 309, 329, 88 S.Ct. 2128, 2139, 20 L.Ed.2d 1118 (1968), that in the Social Security Act "Congress must have meant by the term 'parent' an individual who owed to the child a state-imposed legal duty of support," the State constructs the following argument: Under Iowa law and its presumption of legitimacy for a child conceived or born in wedlock, a natural father has no duty to support his child unless and until his paternity has been established by court order. The requirement of a judicial determination of paternity is, according to the State, part of the state law that defines a father's duty to support his child, and therefore properly may be applied in determining whether a natural father is a parent for purposes of AFDC–UP.

This argument is similar to one that the Court rejected in *King v. Smith.* That case involved "the validity of Alabama's so-called 'substitute father' regulation which denies AFDC payments to the children of a mother who 'cohabits' in or outside her home with any single or married able-bodied man." 392 U.S. at 311, 88 S.Ct. at 2130. "Under this provision, and, insofar as relevant here, aid can be granted only if 'a parent' of the needy child is continually absent from the home. Alabama considers a man who qualifies as a 'substitute father' under its regulation to be a

nonabsent parent within the federal statute. The State therefore denies aid to an otherwise eligible needy child on the basis that his substitute parent is not absent from the home." *Id.* at 313, 88 S.Ct. at 2131.

Alabama argued that "its substitute father regulation simply defines who is a nonabsent 'parent' under § 406(a) of the Social Security Act." *Id.* at 317–318, 88 S.Ct. at 2133. The Court rejected that contention. It held that in the provisions governing AFDC Congress intended that "the only kind of 'parent' under § 406(a), whose presence in the home would provide adequate economic protection for a dependent child is one who is legally obligated to support him ... the regulation is therefore invalid because it defines 'parent' in a manner that is inconsistent with § 406(a) of the Social Security Act. 42 U.S.C. § 606(a)." *Id.* at 332–3, 88 S.Ct. at 2141, footnote omitted. The Court concluded: "We hold today only that Congress has made at least this one determination: that destitute children who are legally fatherless cannot be flatly denied federally funded assistance on the transparent fiction that they have a substitute father." *Id.* at 334, 88 S.Ct. at 2142.

The Court's statement linking the term "parent" to someone legally obligated to support the child was made in ruling that Alabama could not deny AFDC benefits to otherwise qualified children on the legal fiction that the man with whom the mother cohabitated, who was unrelated to the children and provided no support for them, was the children's father who was not absent from the home. The statement cannot fairly be applied to the significantly different situation in this case to deny benefits to the child's biological father because the father's paternity had not been previously judicially established. As in *King v. Smith,* the state here cannot justify its application of its judicially-determined-paternity principle as simply defining who is a "father" for purposes of determining eligibility for AFDC–UP benefits. The Secretary (and, indeed Iowa itself) have already made that definition by determining that a child's "natural" or "adoptive" father is its parent. The issue here is what requirements and procedures Iowa may prescribe

for determining whether a particular male is a child's "natural," i.e., biological father.

■ Iowa has broad discretion in selecting the requirements and procedures it chooses to follow. Undoubtedly the state could require a blood test as a condition for establishing paternity. We hold, however, that in the particular circumstances here—where there is no question that Jody is Jesse's biological father, as an Iowa court has determined—the state's application of its judicially-determined-paternity requirement as a basis for denying Jody AFDC–UP benefits for the two months at issue, was arbitrary because it bore no reasonable relationship to the purpose of the Act to provide benefits "where the impoverishment of a parent causes dependent children to be needy." *Batterton*, 432 U.S. at 419, 97 S.Ct. at 2402. The district court thus correctly determined that "no overpayment of benefits exists with respect to Deena Jenkins" and we affirm that ruling.

The recent decision of the Supreme Court in *Anderson v. Edwards*, —— U.S. ——, 115 S.Ct. 1291, 131 L.Ed.2d 178 (1995), does not support the state's contention. That case involved the validity of a California rule requiring that all needy children living in the same household, where there is only a single adult caring for them, must be grouped into a single "assistance unit" in determining AFDC benefits, even though the children are not all siblings. Such grouping could reduce the benefits payable to the unit. The Supreme Court held that this state grouping requirement did not violate federal law.

The only possible relevancy of the case was the Court's statement that "As we examine the regulations, we keep in mind that in AFDC cases, 'the starting point of the . . . analysis must be a recognition that . . . federal law gives each State great latitude in dispensing its available funds.'" —— U.S. at ——, 115 S.Ct. at 1296. Anderson involved wholly different regulatory provisions and issues from the present case. Moreover, the "great latitude in dispensing its available [AFDC] funds" that "federal law gives each State" sheds no light on the narrow issue we here decide: that, in the circumstances of this case, Iowa cannot deny AFDC benefits to a child's biological father because that father has not yet established his paternity in a judicial proceeding.

C. The district court further ruled that the appellant Palmer's "policy of requiring putative fathers of children conceived while the mother was married to another man to obtain court orders to establish paternity for AFDC–UP eligibility purposes is invalid." The court's injunctive provisions were designed to implement that ruling and provide relief for the other members of the class whom Deena Jenkins represented. In his appeal the appellant Palmer has not challenged either the certification or the scope of the injunction.

When the district court upon ruling for the plaintiff (1) certified the class and (2) entered the injunction, it did not know that our affirmance would be on the narrower ground we adopt. Considering all the circumstances, we shall vacate the injunctive provisions and remand the case to the district court to allow it to reconsider those provisions in the light of our decision. On the remand the district court also is authorized, if it deems it appropriate, to reconsider the class certification and description. *See* Fed.R.Civil P. 23(c)(3); *cf. Bishop v. Committee on Professional Ethics and Conduct*, 686 F.2d 1278, 1285 (8th Cir.1982) ("the mere fact that a class has been certified by the district court is not necessarily sufficient to require the court to reach the merits of the class claims, when the claims of the named representative have become moot"). The district court might consider whether, in light of the limited ground of our affirmance of the judgment in favor of Deena Jenkins, she still is an appropriate representative of the class in its quest for broader relief. *Cf. id.* at 1288. These are all matters for the district court to consider on the remand; we indicate no views on any of them.

The first and second paragraphs of the judgment of the district court, which (1) declared that there was no overpayment of benefits with respect to Deena Jenkins and (2) awarded her costs and reasonable attorney fees, are affirmed. The four remaining paragraphs of the judgment are vacated, and the case is remanded to the district court to reconsider those paragraphs in light of our

decision. On the remand the district court also may reconsider the class certification and description.