REQUESTED BY: Joan E. Schwan State Foster Care Review Board
You have requested our opinion on three issues:
(1) Are the Winnebago, Omaha and Macy Indian Nations bound by LB 642, which requires the State Foster Care Review Board ("Board") to conduct periodic case reviews which meet the requirements of the Federal Adoption Assistance and Child Welfare Act of 1980?
(2) If the tribes are bound by LB 642, may the Board enter into contracts with the tribes to conduct their own reviews without being subject to the authority of the Board?
(3) Do the Winnebago Nation's tribal court reviews qualify for Title IV-E funding under Section 2 of LB 642 in place of reviews by the Board?
We conclude that the tribes are bound by LB 642, that the Board may not enter into contracts with the tribes to conduct their own reviews, and that, in the interest of caution, tribal court reviews may qualify for Title IV-E funding under LB 642.
DISCUSSION
You first ask whether LB 642, a state law, can be applied to the State's Indian tribes. State law applies to Indians only in limited circumstances. "When on-reservation conduct involving only Indians is at issue, state law is generally inapplicable."White Mountain Apache Tribe v. Bracker, 448 U.S. 136,144, 100 S.Ct. 2578, 2584, 65 L.Ed.2d 665, ___ (1980). InCalifornia v. Cabazon Band of Mission Indians,480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244, ___ (1987), the Court stated:
 `[T]ribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the States.' [Citation omitted.] It is clear, however, that state laws may be applied to tribal Indians on their reservations if Congress has expressly so provided.
Thus, the issue is whether Congress has provided Nebraska the authority to impose the statute in question, LB 642, on tribal Indians.
The Adoption Assistance and Child Welfare Act of 1980, enacted in part as Part E of Subchapter IV of Title 42 ("Title IV-E"), establishes federal payments to provide foster care and adoption assistance to children who would otherwise be eligible for federal assistance under Part A of Subchapter IV but for their removal from the home of a relative and to children who have special needs. 42 U.S.C. §§ 670 672. States are not obligated to participate in Title IV-E funding, but if they choose to do so and receive funding, they must conform to the requirements of the Social Security Act. Todd v.Norman, 840 F.2d 608 (8th Cir. 1988); Edwards v.McMahon, 834 F.2d 796 (9th Cir. 1987).
Title IV-E payments are only available to states which have submitted, and had approved by the Secretary of Health and Human Services, state plans complying with Title IV-E. 42 U.S.C. § 671. The state plans must meet a certain number of requirements in order for the State to be eligible for the federal payments. Those requirements are listed in 42 U.S.C. § 671. One of the requirements is that the state plan:
 provides for the development of a case plan (as defined in section 675(1) of this title) for each child receiving foster care maintenance payments under the State plan and provides for a case review system which meets the requirements described in section 675(5)(B) of this title with respect to each child[.]
42 U.S.C. § 671(a)(16). Section 675(5)(B) states that the case review system must assure, among other things, that:
 the status of each child is reviewed periodically but no less frequently than once every six months by either a court or by administrative review (as defined in paragraph (6)) in order to determine the continuing necessity for and appropriateness of the placement, the extent of compliance with the case plan, and the extent of progress which has been made toward alleviating or mitigating the causes necessitating placement in foster care, and to project a likely date by which the child may be returned to the home or placed for adoption or legal guardianship[.]
42 U.S.C. § 675(5)(B). If the State fails to comply with these provisions, it will lose the federal funding.
While Title IV-E requires the State to conduct six-month reviews, it does not require the State to appoint any particular entity to conduct the reviews. In Title IV-E and other Aid to Families with Dependant Children cases, federal law gives each state great latitude in dispensing with its available funds.Anderson v. Edwards, ___ U.S. ___, 115 S.Ct. 1291,131 L.Ed.2d 178 (1995). Thus, the State appears to have discretion to determine exactly who shall be responsible for conducting such reviews. The Nebraska Legislature, via LB 642, has appointed the State Foster Care Review Board as the responsible body. Since LB 642 does not conflict with any of the provisions of Title IV-E, LB 642 is an appropriate exercise of that discretion.
Before an eligible child is entitled to receive Title IV-E funds, several requirements must be met. These requirements are set out in 42 U.S.C. § 672. One of the requirements is particularly relevant to this discussion:
 (2) such child's placement and care are the responsibility of (A) the State agency administering the State plan approved under section 671 of this title, or (B) any other public agency with whom the State agency administering or supervising the administration of the State plan approved under section 671 of this title has made an agreement which is still in effect;
42 U.S.C. § 672(a)(2).
The federal Indian Child Welfare Act ("ICWA"),25 U.S.C. §§ 1901 through 1963, authorizes agreements between states and tribes concerning the care and custody of Indian children.25 U.S.C. § 1919(a). Such agreements satisfy the requirement of42 U.S.C. § 672(2)(B). Moreover, in the absence of such an agreement, an Indian tribe is not entitled to receive Title IV-E funds. Native Village of Stevens v. Smith, 770 F.2d 1486
(9th Cir. 1985).
Neither the federal ICWA nor Title IV-E make any provisions for Indian tribes which do not comply with the State plan to receive Title IV-E funds. Also, the State would risk losing its funding if it were to allocate Title IV-E funds to tribes not meeting the requirements of the State plan. Thus, any agreement between the State and Indian tribes must meet the requirements of the State plan, and the tribes must abide by those requirements. Since the State has discretion to require the State Foster Care Review Board to conduct the six-month reviews as part of the State plan, the Winnebago, Omaha, and Macy Indian Nations must submit to those reviews or risk losing their Title IV-E funds.
You next ask whether the Board could enter into a contract with the Omaha Nation, whereby the Omaha Nation could conduct its own reviews using its own board without being under the authority of the State Board or any local board. The question appears to arise from the language of Section 1 of LB 642, which states, "[t]he State Foster Care Review Board shall be responsible for the conduct of periodic reviews which shall be identified as reviews which. . ." The question, then, is whether the phrase, "responsible for the conduct" means that the Board must actually conduct the reviews itself, or whether it must simply ensure that the reviews are carried out by some entity, either itself or an entity with whom it has contracted.
We first note that the language of the statute is unclear. The word "responsible" is defined by Webster's Ninth New Collegiate Dictionary as, "liable to be called upon to answer as the primary cause, motive, or agent; liable to legal review or in case of fault to penalties." This definition does not make clear whether the Board can delegate the reviews to a contracted entity. However, when a statute is ambiguous, the court may examine the legislative history of the act in question to ascertain the Legislature's intent. Southern Nebraska RuralPublic Power Dist. v. Nebraska Elec. Generation and TransmissionCo-op, Inc., 249 Neb. 913, 546 N.W.2d 315 (1996).
It is clear from the legislative history that the Legislature intended the Board to actually conduct the reviews itself, rather than contracting the reviews out. The floor debates reveal that every Senator who argued either in favor of or in opposition to this bill agreed that the State Foster Care Review Board and its local boards had to actually conduct the reviews themselves. For example, Senator Bernard-Stevens, while addressing the appropriateness of transferring Department of Social Services workers to the State Board via LB 642, stated, ". . . and we then transfer all authorities of review to Foster Care without any feeling of whether or not there is the volunteers to do it. . . ." Floor Debate on LB 642, 94th Neb. Leg., 1st Sess. 6543 (May 9, 1995) (Statement of Senator Bernard-Stevens). Senator Hillman stated very shortly thereafter:
 Currently what we have is a system where DSS does those reviews, and Foster Care Review Board does a random review, doesn't do all of them. What Senator Avery's bill, to me, says we are just going to flip-flop that situation where the Foster Care Review Board does all of them and DSS does just a random review.
Id. at 6544 (Statement of Senator Hillman). Senator Bohlke discussed the feasibility of awarding the task to the State Board:
 . . . but what I would need and hope that you may give a discussion of how we are going to make sure that we have trained volunteers [to review the cases] in each of the counties. . .
Id. at 6548 (Statement of Senator Bohlke). Senator Avery, the sponsor of the bill, answered:
 Well, we know that the 200 volunteers have reviewed 1,936 [cases]. There will be additional boards provided with each of the transferred employees for each . . . for some of those to the point where we are reviewing the total, roughly 4,400 children that are in out-of-care placement. Now we have to get into some detail of the children, the type of children that need some type of review.
Id. at 6549 (Statement of Senator Avery). It is clear from Senator Avery's discussion of additional boards and volunteers, as well as the comments from the other Senators, that LB 642 requires the State Foster Care Review Board to conduct the reviews. There are similar comments from at least ten other Senators in numerous places in the record, which show that they understood LB 642 to require the Board to conduct the reviews itself through the local boards. Thus, the Board cannot contract with the tribes to allow the tribes to conduct their own reviews without being subject to the rules and regulations of the Board.
Finally, you ask whether the Winnebago Nation's court reviews would qualify as Title IV-E reviews under LB 642, Section 2. Section 2 states:
 It is the intent of the Legislature that any six-month court review of a juvenile pursuant to sections 43-278 and 43-1313 shall be identified as a review which meets the federal requirements for six-month case reviews pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, Public Law 96-272.
Your request appears to concern reviews conducted under 43-1313
rather than under 43-278. The question of whether the Winnebago Nation's reviews fall under the provisions of 43-1313 or are sufficiently equivalent to those reviews to qualify for funding is a matter of state law as opposed to federal law. As stated above, 42 U.S.C. § 671(a)(16) requires the State to provide for six-month reviews, but it gives the State discretion as to how to conduct those reviews. Section 2 of LB 642 is an exercise of that discretion.
Neb. Rev. Stat. § 43-1313 states in part:
 When a child is in foster care, the court having jurisdiction over such child for the purposes of foster care placement shall review the dispositional order for such child at least once every six months.
Neb. Rev. Stat. § 43-1313 (1993). The language of the statute itself is unclear as to whether it applies to tribal courts. The legislative history is silent on the issue.
The provisions of the Foster Care Review Act ("FCRA"), Neb. Rev. Stat. §§ 43-1301 through 43-1318 (1993), and the Nebraska ICWA, Neb. Rev. Stat. §§ 43-1501 through 43-1516 (1993), provide little guidance. First, the Nebraska ICWA provides:
 An Indian tribe shall have jurisdiction exclusive as to this state over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the state by existing federal law. When an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.
Neb. Rev. Stat. § 43-1504(1) (1993). If § 43-1313 were found to impose a six-month review requirement on the tribal courts, it would appear to violate the tribe's sovereignty and jurisdiction. Also, Neb. Rev. Stat. § 43-1301(5) (1993) appears to provide for the application of provisions of the FCRA to Indian tribes by incorporating "entit[ies] having jurisdiction over the child pursuant to the Nebraska [ICWA]" into the definition of the phrase "person or court in charge of the child," which is used in various places in the FCRA. That phrase is not used in § 43-1313 to refer to the parties to which that section applies. Rather, the language used is, "the court having jurisdiction over such child for the purposes of foster care placement." If the Legislature wished to include tribal courts in the application of 43-1313, it probably would have used the phrase, "court in charge of the child."
On the other hand, there is reason to believe that 43-1313
does apply to tribes. Several sections of the FCRA contain the phrase, "except as otherwise provided by the Nebraska [ICWA]." It can be reasoned that when the Legislature has specifically excluded tribes in certain parts of the act and not in others, the Legislature intended the tribes to be included in those other parts.
Two provisions of the federal ICWA may appear to apply to this question and should be addressed. First, 25 U.S.C. § 1911(d) states:
 The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.
At first glance, it would appear that tribal court reviews must be viewed as equivalent to the reviews conducted under 43-1313. However, the tribal court reviews are not conducted for the purpose of qualifying for Title IV-E funding, since those reviews were in place before the passage of LB 642. Rather, they are presumably conducted for the purpose of determining the necessity of the continued placement of the child. It is possible for the State to give full faith and credit to the determination of the tribal court regarding placement while finding that the tribal court's review was not sufficient to qualify the child for Title IV-E funding.
Second, 25 U.S.C. § 1931(b) states in part:
 For purposes of qualifying for assistance under a federally assisted program, licensing or approval of foster or adoptive homes or institutions by an Indian tribe shall be deemed equivalent to licensing or approval by a State.
While this section does not require the State to accept a tribal court's reviews as equivalent to state court reviews qualifying for Title IV-E funds, it appears to show an intent on the part of Congress that the State do so.
Our office has no clear answer on whether tribal court reviews are equivalent to § 43-1313 reviews for the purpose of qualifying for Title IV-E funding under Section 2 of LB 642. However, since this issue is a matter of state law, if the State determines that the tribal court reviews do fall under the provisions of LB 642, it is unlikely that the federal government will interfere with this interpretation. On the other hand, if the State determines that the tribal court reviews do not qualify for funding, it is possible that certain tribes will seek to litigate the issue. At that point, the federal courts may determine, under the aforementioned provisions of the federal ICWA, that the reviews do qualify for funding. Therefore, in the interest of caution, this office recommends that the Winnebago Nation's tribal court reviews qualify for Title IV-E funding under section 2 of LB 642.
Sincerely,
 DON STENBERG Attorney General
 David R. Tarvin, Jr. Assistant Attorney General
Approved By:
__________________________________ Attorney General